REVLON SERVICES, INC., *Petitioner,*
*v.*
EMPLOYMENT DIVISION, *Respondent.*
(No. 76-T-72, CA 7826)

567 P2d 1072

Nelson D. Atkin, II, Portland, argued the cause for petitioner. On the brief were Joseph A. Brislin and Dezendorf, Spears, Lubersky & Campbell, Portland.

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Johnson, Judges.

JOHNSON, J.

## JOHNSON, J.

Petitioner, Revlon Services, Inc., manufactures cosmetics which are sold to department stores throughout the United States. As part of its sales effort, Revlon, working with the individual customer department stores, periodically puts on promotional programs which include advertising and placing women makeup artists in the stores to demonstrate Revlon products. These so-called "free-lance artists" are skilled in cosmetic application and have demonstrated sales abilities. There are less than twelve free-lance artists in the Portland area. They are housewives who engage in this activity for "pin money" at $5 per hour. Typically free-lance artists are engaged from time to time by Revlon and also by other cosmetic manufacturers.

The Employment Division referee, after hearing, held that the free-lance artists were employes with respect to whom Revlon is subject to unemployment taxes. Revlon appeals contending that the free-lance artists are not employes under ORS 657.040 which provides:

"Services performed by an individual for remuneration are deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the administrator that:

"(1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(2)(a) Such individual customarily is engaged in an independently established business of the same nature as that involved in the contract of service; or

"(b) Such individual holds himself out as a contractor and employs one or more individuals to assist in the actual performance of services and who meets the following criteria shall be deemed to have an independently established business:

"(A) The individual customarily has two or more effective contracts.

[ 731 ]

"(B) The individual as a normal business practice utilizes separate telephone service, business cards and engages in such commercial advertising as is customary in operating similar businesses.

"(C) The individual is recognized by the Department of Revenue as an employer.

"(D) The individual furnishes substantially all of the equipment, tools and supplies necessary in carrying out his contractual obligations to his clients."

■■ The burden of proving that the person rendering the service comes within either of the exceptions under paragraphs (2)(a) or (2)(b) is on the person contracting for the services. *Baker v. Cameron,* 240 Or 354, 401 P2d 691 (1965). As a prerequisite to either exception, the person contracting for the services must prove under subsection (1) that the person performing the services is free from the former's control or direction. Respondent concedes that the free-lance artists are free from Revlon's, control or direction.

The tests specified in paragraphs (2)(a) and (2)(b) are part and parcel of a single statutory exception. Under paragraph (2)(a) the person contracting for services must generally prove that the individual "customarily is engaged in an independently established business * * *." Under paragraph (2)(b) the test is still whether the individual is engaged in an "independently established business" but there are six specific elements of proof.[1] If the person contracting for the services proves all six elements, then the individual is an independently established business. If he fails to prove any of these six elements, then the individual does not come within the exception stated under (2)(b) but may nevertheless be an independently

---

[1] The person contracting for the services must prove that the person performing the service (1) holds himself out as a contractor; (2) employs one or more individuals to assist in the actual performance of services; (3) customarily has two or more effective contracts; (4) as a normal business practice utilizes separate telephone service, etc.; (5) is recognized by the Department of Revenue as an employer; and (6) furnishes substantially all of the equipment.

[ 732 ]

established business under (2)(a). Revlon concedes that the free-lance artists are not exempt under (2)(b).

■   In contending that free-lance artists are within the exception of paragraph (2)(a), Revlon in effect argues that its burden of proof under paragraph (2)(a) is *less* than that under paragraph (2)(b). In other words, (2)(a) requires a lesser showing of independence. However, judicial interpretation and the legislative history of ORS 657.040 indicate to the contrary.

Prior to 1967, the only exception in ORS 657.040 was what is now paragraph (2)(a) of the statute. Paragraph (2)(b) was added by amendment in 1967 after the Oregon Supreme Court's decision in *Baker v. Cameron,* 240 Or 354, 401 P2d 691 (1965). The facts in *Baker* are significant. The petitioner, a home improvement contractor, obtained most of his business through salesmen who called on home owners and endeavored to sell roofing or siding jobs. The salesmen had been engaged in their business for several years and dealt with several material suppliers, including the petitioner. The salesmen employed canvassers to seek out jobs and advertised by newspaper and direct mail. They provided their own automobiles and offices. The salesmen fixed the price with the customer and divided the profits with the supplier, the salesman usually receiving two-thirds of the profit. The salesmen likewise shared in any losses resulting from the job. The court held that the salesmen were not engaged in an independently established business, quoting a law review article as a statement of the applicable law:

> " "* * * Given full scope, it requires not only that the worker be himself an entrepreneur, but also that the service be rendered by him in that capacity; and it thus approaches, as nearly as a formal test can approach, the economic line that bounds the risk of unemployment. The double requirement, that the worker's occupation be "independently established" and that he be "customarily" engaged in it, clearly calls for an enterprise created and existing separate and apart from the relationship

with the particular employer, an enterprise that will survive the termination of that relationship. * * *" Willcox, *The Coverage of Unemployment Compensation Laws,* 8 Vand L Rev 245, 264-265 (1955)." 240 Or at 365.

After *Baker* the 1967 legislature enacted Senate Bill 176. The testimony and statements by legislators indicate that the purpose of the bill was to broaden the exception for independent contractors provided for under ORS 657.040 and to make the test more definite and certain. *See* Minutes, Senate Committee on Labor and Industries, February 27, 1967, at 8-11; Minutes, House Committee on Labor and Management, April 28, 1967, at 1-2. The original bill eliminated subsection (2) in its entirety, thus reducing the test to the sole question of direction and control. The first amendments adopted in the Senate provided for a new subsection (2), incorporating the language of present paragraph (2)(b), but continuing to eliminate paragraph (2)(a). The bill was amended again and passed by both houses incorporating both paragraphs (2)(a) and (2)(b) in their present form. The testimony indicates that the only reason the (2)(a) language was restored was a concern that some persons who were then exempt under the act might not be able to meet all the specific tests of (2)(b), but nevertheless would satisfy the stringent legal tests established by prior judicial decisions, i.e., *Baker.* Under the new paragraph (2)(b) test, it is apparent that the salesmen in *Baker* would have qualified as independently established businesses.

The Oregon Supreme Court further amplified on the applicable criteria under paragraph (2)(a) in *Kirkpatrick v. Peet,* 247 Or 204, 428 P2d 405 (1967), decided prior to the effective date of Senate Bill 176. The court there rejected the common law test for determining master-servant, stating:

"* * * [T]he test is to be found by looking at the purpose of the Act. That purpose is served only if the Act is construed broadly enough to include persons who, although independent contractors according to the com-

mon law test, are peculiarly subjected to the hazard of unemployment because of the nature of their occupation.

"'* * * * *

"'* * * We understand this part of the statute [paragraph (2)(a)] to mean that to exclude coverage it must be shown that the person engaged to perform services for another does so as an entrepreneur, i.e., where the enterprise calls for the investment of risk capital with the prospect of reaping returns or suffering a loss in the venture, the employment of others, and ordinarily the performance of service for more than one person. * * *

"It is to be noted that the statute requires the occupation to be both 'independently established' and 'customarily' engaged in. This requirement is not met if the continued existence of the enterprise depends upon its relationship with a particular employer. If there is such dependence, the person employed does not have the prospect of supporting himself in the pursuit of his occupation if the person employing him terminates the relationship. It was the purpose of the Unemployment Insurance Act to provide relief where there was this type of risk of unemployment." 247 Or at 212-14.

While *Kirkpatrick* places emphasis on risk capital, the employment of others and performance of the service for more than one person, these may not be the exclusive criteria. *See Teton Industries v. Emp. Div.,* 26 Or App 725, 730-31, 554 P2d 580, Sup Ct *review denied* (1976). The ultimate issue is whether the person performing the services is an entrepreneurial enterprise enjoying such a degree of economic independence that the enterprise can survive any relationship with the particular person contracting for the services.

Revlon relies on our decisions in *Europorama v. Employment Div.,* 22 Or App 431, 539 P2d 1157 (1975), and *Michelet v. Morgan,* 11 Or App 79, 501 P2d 984 (1972). Both are distinguishable. In *Europorama* we held certain circus performers were not employes of a producer. The performers owned their own equipment, employed others, were highly skilled and their enterprises were created wholly independent of the producers. The acts were "completely self-contained—they

[ 735 ]

could go on to their next engagement or find another producer if the relationship with petitioner were terminated." *Europorama v. Employment Div., supra,* 22 Or App at 435. None of these factors is present here.

In *Michelet* we held that persons performing transcribing and typist services for court reporters were not employes and we emphasized that the typists provided their own equipment and office space, were paid on a piece-work basis, and performed similar services for several other persons. Furthermore, in light of the strict holding of *Baker* it is questionable that *Michelet* has any precedential value.

■ In the present case the respondent concedes that Revlon has satisfied subsection (1) of ORS 657.040 concerning control or supervision. Nonetheless the absence of control or supervision appears to be the result of the uncomplicated nature of the work rather than any delegation by Revlon. Although some skill is required, the jobs do not require the degree of skill or professionalism that might be associated with an independently established business. The fact that there are less than 12 artists in the Portland area is not so much evidence of skill or economic independence as it is a labor market which pays $5 per hour on a casual basis.

The artists are paid on an hourly basis only for work done and thus there is no profit or loss factor characteristic of an independent business. The artists supply neither capital, equipment nor a place for performing the service. They are not engaged in a business which hires others, has goodwill or is capable of being sold. Although the artists are required to provide their own transportation and wardrobe, there is no finding or evidence that these expenses are other than those that ordinarily would be considered personal rather than business in nature. The task being performed here is a regular part of Revlon's business to promote the sale of cosmetics.

It is true that the free-lance artists on occasion also work for one of Revlon's competitors. This fact alone hardly establishes that they are an independently established business. To the contrary, it is clear that their ability to retain employment is almost wholly dependent on maintaining their relationship with Revlon.

Affirmed.