Argued August 18, 1977, affirmed January 23, reconsideration denied March 8, review allowed May 31, 1978

BYRNE TRUCKING, INC., *Petitioner,*

*v.*

EMPLOYMENT DIVISION, *Respondent.*

(No. 77-T-1, CA 8271)

574 P2d 664

J. Terrence Bittner, Portland, argued the cause for petitioner. With him on the brief were Lynda Nelson Gardner and Jones, Lang, Klein, Wolf & Smith, Portland.

John W. Burgess, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Richardson and Johnson, Judges.

RICHARDSON, J.

## RICHARDSON, J.

This appeal raises the issue whether the relationship between petitioner and 53 truck "owner-operators" who lease equipment and provide labor to petitioner for interstate freight hauling, constitutes employment subjecting petitioner to liability for unemployment compensation taxes under ORS ch 657.

The administrator of the Employment Division determined these truckers were employes and assessed delinquent unemployment compensation taxes. Petitioner applied for a hearing before an Employment Division referee pursuant to ORS 657.679 and 657.683. The referee held the owner-operators were employes under ORS ch 657 and affirmed the order of assessment. Petitioner appeals to this court pursuant to ORS 657.684. The determination of assessment by the administrator is prima facie correct and the burden is upon the protesting employer to establish the contrary. ORS 657.683(4). We agree with the findings and conclusions of the referee and affirm.

Although there were 53 separate individuals designated as employes in the deficiency assessment, petitioner presented only four of these individuals as witnesses. Petitioner's counsel stated that these four truckers and their hauling contracts were typical of the relationship between petitioner and all 53 of the individual truckers named in the assessment.

Petitioner is a common carrier operating in both interstate and intrastate commerce. When engaged in interstate commerce petitioner carries on its business by leasing trucks and trailers from owner-operators pursuant to standard hauling contracts. Petitioner also leases trucks of its own to haulers, on a lease-back arrangement, who then haul freight for petitioner on the same basis as the truckers who own their own equipment. These latter truck leases provide that the equipment shall be used exclusively in hauling contracts for Byrne Trucking. In the event the hauling

[ 231 ]

contract is terminated the lease automatically terminates and the equipment is returned to Byrne Trucking. The leases also provide for a purchase option. It appears most of the lessees had exercised the option and were making payments to Byrne on their trucks.

Byrne Trucking procures the freight to be hauled and collects the freight charges from the shippers. The freight haulers are paid 70 to 75 percent of the revenue received from each haul. From this amount the owner-operator is responsible for all expenses incident to operation of his equipment, wages for himself and any person he employs in carrying out his responsibilities under the hauling contract. The owner-operator is responsible for loading the freight and delivering it to its destination. He has complete control of the methods of loading, the route selected and the hours he wishes to spend driving. He may maximize profits by reducing expenses and hauling more freight.

The contracts provide "[c]ontractor [owner-operator] hereby agrees to furnish to Carrier for its exclusive use, the equipment described * * * and all labor sufficient for the use of the said equipment * * *." The parties further agreed the owner-operators would place a sign on the truck identifying it as having been leased to petitioner. Byrne Trucking's I.C.C. number is also displayed on the truck.

The owner-operators' investment in their equipment is approximately $15,000 to $30,000 per unit. The owner-operators testified they considered themselves independent contractors[1] and if the contract with Byrne Trucking were terminated they would enter into a similar arrangement with another common carrier. The evidence indicated contract haulers are at a premium in petitioner's area. With one exception, the truckers testified they did not have a

[1]The hauling contract provides under the heading of "STATUS OF PARTIES" the owner-operator "stands solely in the capacity of an independent contractor."

[ 232 ]

business they could sell apart from the value of their equipment. The hauling contracts are not assignable.

Petitioner contends that the owner-operators it regularly contracts with are not employes under ORS 657.040 (1) and (2)(a), which provides:

"Services performed by an individual for remuneration are deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the administrator that:

"(1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(2) (a) Such individual customarily is engaged in an independently established business of the same nature as that involved in the contract of services * * *."

As a prerequisite to an exception under subsection (2)(a) the person contracting for the services must prove under subsection (1) that the person performing the services is free from the former's control. *Revlon Service, Inc. v. Employment Div.,* 30 Or App 729, 567 P2d 1072 (1977). The Employment Division concedes the "owner-operators" are free from Byrne Trucking's control or direction. Petitioner makes no contention the truck owner-operators are exempt under ORS 657.040(2)(b).[2]

In *Republic Development Co. v. Emp. Div.,* 32 Or App 263, 574 P2d 660 (1978), after an exhaustive analysis of the case law, statutes and legislative history, we concluded "* * * that a service relationship that creates a long or short-term dependency for income on the buyer's need for the service as service (as distinguished from an end product) is employment

---

[2]Under subsection (2)(b) of ORS 657.040 the person contracting for the services must prove the individual performing the services (1) holds himself out as an independent contractor; (2) employs one or more persons to assist in performing the services; (3) customarily has two or more contracts; (4) utilizes a telephone service, business cards, etc., as a normal business practice; (5) is recognized by the Department of Revenue as an employer; and (6) furnishes substantially all of the necessary equipment.

for the purpose of the unemployment compensation law."

Byrne, in this contract relationship, is purchasing a service to carry on its own enterprise. It is not simply leasing freight hauling equipment. The contract is for the services of a driver and equipment to carry freight Byrne contracts to forward. The trucks, like roofing and siding installation equipment, *Baker v. Cameron,* 240 Or 354, 401 P2d 691 (1965), and building equipment, *Republic Development Co. v. Emp. Div., supra,* are the tools of the trade necessary to carry out the service required in the contract.

We conclude the order of the referee was a correct application of the law and is supported by substantial evidence. Since petitioner asserts the evidence presented presents the typical relationship of all the owner-operators included in the deficiency determination of the administrator we find petitioner has not met its burden of proof as to all 53 owner-operators.

Affirmed.

**JOHNSON, J.,** specially concurring.

The majority rests its decision on the opinion of this court in *Republic Development Co. v. Employment Div.,* 32 Or App 263, 574 P2d 660 (1978), with which I disagree. That opinion is based upon an irrational initial premise, an erroneous interpretation of *Baker v. Cameron,* 240 Or 354, 401 P2d 691 (1965), and an unwarranted disregard of *Kirkpatrick v. Peet,* 247 Or 204, 428 P2d 405 (1967). The rule resulting from our opinion in *Republic* is more confusing than the present state of the law, is likely to lead to a wholesale disruption of existing business arrangements and extend unemployment insurance and taxes to many persons whom the act was never intended to cover. The lengthy opinion in *Republic* was unnecessary. The case is on all fours with and should be decided by citing *Baker* without the court's erroneous adoption of a rule encompassing facts not before it.

## THE INITIAL PREMISE

ORS 657.040 states that in order to qualify for the (2)(a) exemption, an individual must be "customarily engaged in an independently established business * * *." In *Republic,* my brethren state that in the absence of case law, this language "can fairly be read to require that the claimed exempt service be performed by one who usually in the course of his affairs performs the same services for consumers of his product without intervention of the economic activities or interests of others upon which he is dependent to furnish the demand for which he is the supplier." 32 Or App at 268.

That conclusion must come as a surprise to anyone familiar with the common usage of the English language and the industrial revolution. To most people, an individual who is engaged in "an independently established business" would broadly mean an individual who is an entrepreneur and would not be confined to persons who produce or market products for ultimate consumption. As a result of the industrial revolution there is hardly a product that is marketed for ultimate consumption that is not affected by the intervention of a myriad of independent enterprises. The absurdity of the logic in *Republic* is illustrated by its application here. We hold the owner-operators are employes because they provide a service to Byrne Brothers which is in turn producing a final product, i.e. the transportation of goods. By the same reasoning, why are not the truck manufacturers, distributors and dealers employes of Byrne Brothers, as they supply a service used in producing Byrne Brothers' final product. Why isn't Byrne Brothers the employe of its customer who requires delivery of the goods in order to manufacture the customer's final product. Indeed, under the reasoning of *Republic* we could conceivably have an endless chain wherein everyone is an employe and no one is the employer.

## BAKER AND KIRKPATRICK

The linchpin of our opinion in *Republic* is the following paragraph interpreting *Baker*:

> "Although the language usually quoted from *Baker* is a quote from the Willcox article cited in footnote 4, supra, the real key to the case is these words:
>
> > " '* * * [T]he Commission's records, however, reveal a different picture. They show that a substantial number of these men are not "customarily" entrepreneurs, "engaged in an independently established business." They "customarily" work for only one, two or three employers. *When work for such employers is not available these men become unemployed.*' " (Emphasis supplied.) 240 Or at 366.
>
> "If one reads the emphasized sentence as referring to only the relationship between 'these men' and Baker, it is a false statement, for the record was clear that they always could (and at least occasionally did) perform exactly the same service for Baker's competitors. The only sense in which the statement is true is that 'these men' were economically dependent for a market for their services on people or firms like Baker who marketed the ultimate product to consumers. They were thus employes." 32 Or App at 270-71.

This conclusion is fallacious since Baker did not "market" the ultimate product. Baker was the materialman. The product was marketed by the salesman; the ultimate product was installed by the applicators. The salesmen and applicators were held to be Baker's employes, not vice versa.

There is nothing "false" in the Supreme Court's analysis in *Baker. Baker* is premised on a theme that runs through all of these cases and was expressly stated in *Kirkpatrick.* ORS 657.040 is to be interpreted as not merely incorporating the common law test for determining master and servant, but in light of the policy of the act which is to provide unemployment insurance to all persons who "are peculiarly subjected to the hazard of unemployment because of the nature of their occupation." *Kirkpatrick v. Peet, supra,* 247 Or at 212, Contrary to our reasoning in *Republic,* the

court in *Baker* did not ignore the facts that the salesmen and applicators occasionally employed others and that they occasionally rendered services to Baker's competitors. It is clear that they considered such facts as significant indicia that the salesmen and applicators had independently established businesses.

The *Republic* quotation from *Baker* is incomplete and misleading. The entire passage reads:

> "The testimony of plaintiff Harry Baker and the salesmen and applicators furnishes strong support for the view that these workers are individual entrepreneurs, contracting with any and everyone who wanted their services; examples of free enterprise who are not dependent upon any employer to stay out of the ranks of the unemployed. The Commission's records, however, reveal a different picture. They show that a substantial number of these men are not 'customarily' entrepreneurs, 'engaged in an independently established business.' They 'customarily' work for only one, two or three employers. When work for such employers is not available these men become unemployed." 240 Or at 366.

The court in *Baker* considered the evidence presented by the petitioner as indicative that the salesmen and applicators were independent entrepreneurs. It concluded, however, that the evidence from the Commission's records that "these men become unemployed" was more compelling. Earlier in the *Baker* opinion, the court discussed at length the fact that at least eight of the 44 applicators and salesmen had repeatedly become unemployed, that most of their income, other than that from Baker, came from concerns who "regarded them as employes," and that many of these individuals worked for only one, two or three firms.

The observations of the *Baker* opinion made by this court in *Republic* are untenable. The only legitimate observations that can be made are: first, some independent entrepreneurial indicia were present, i.e. employment of others and by others, and capital in the form of automobiles and tools, but not in significant degree; second, there was compelling evidence that

these individuals were subject to the unemployment risk.

*Baker* is a classic example of judicial application to specific facts of a broad public policy embodied in an ambiguous statute. The difficulty arises when lawyers and courts attempt, as we have in *Republic,* to discern a degree of preciseness from such decisions that rational implementation of the broad public policy does not permit. Economic independence is not an absolute and cannot be ascertained in terms of product. There is probably no enterprise or individual that is wholly independent. Independence is a matter of degree. There is no justification for our conclusion in *Republic* that "in *Baker* the Supreme Court analyzed the relationships involved in a manner that was substantially all encompassing of every purchase of services utilized in the preparation of a product for the consumer of that product * * *."

In *Kirkpatrick* the court expressly stated what was implied in *Baker* — that 657.040(2)(a) is to be construed in light of the policy of the Unemployment Compensation Act. The court went on to refine in somewhat more specific terms than *Baker* the applicable criteria for finding an independently established business:

"* * * We understand this part of the statute [subsection (2)(a)] to mean that to exclude coverage it must be shown that the person engaged to perform services for another does so as an entrepreneur, i.e., where the enterprise calls for the investment of risk capital with the prospect of reaping returns or suffering a loss in the venture, the employment of others, and ordinarily the performance of service for more than one person. * * *

"It is to be noted that the statute requires the occupation to be both 'independently established' and 'customarily' engaged in. This requirement is not met if the continued existence of the enterprise depends upon its relationship with a particular employer. If there is such dependence, the person employed does not have the prospect of supporting himself in the pursuit of his occupation if the person employing him terminates the

[ 238 ]

relationship. It was the purpose of the Unemployment Insurance Act to provide relief where there was this type of risk of unemployment." 247 Or at 213-14.

In *Republic* we ignore *Kirkpatrick* by attempting to distinguish it. We state:

"[*Kirkpatrick*] was decided before subsection (2)(b) was added to the statute covering the factors *Kirkpatrick* dealt with, and for that reason alone, the case should not be regarded as meaningful as we have heretofore regarded it in some of our cases." 32 Or App at 271.

This is an untenable statutory construction. While ORS 657.040(2)(b) added specific and independent criteria by which one can qualify for the exemption, the original language of subsection (2)(a) was retained intact. The fact that *Kirkpatrick* was decided before the enactment of (2)(b) is irrelevant. How can my brethren say in one breath that *Baker* is controlling and in the second say that *Kirkpatrick* is irrelevant because it was decided before the enactment of subsection (2)(b). *Baker* was also decided before the enactment of (2)(b).

The tenable conclusion to be drawn from *Baker* and *Kirkpatrick* is that risk capital, employment of others and rendering services for others are relevant criteria, but no single criteria is controlling, nor is the presence of all three controlling.[1] In *Baker,* all three criteria were present, but not in sufficient degree, particularly in view of the fact that the persons involved often join the ranks of the unemployed. In *Revlon Service, Inc. v. Employment Div.,* 30 Or App 729, 567 P2d 1072 (1977), we stated:

"* * * The ultimate issue is whether the person performing the services is an entrepreneurial enterprise enjoying such a degree of economic independence that the enterprise can survive any relationship with the particular person contracting for the services. 30 Or App at 735.

---

[1] It is no longer likely that litigation will arise under subsection (2)(a) of ORS 657.040 where two of the criteria, employment of others and rendering of services for others, are both present in view of the fact that the contractor can probably qualify under subsection (2)(b).

## APPLICATION OF *BAKER* AND *KIRKPATRICK* TO THE PRESENT CASE

The owner-operators who are the subject of the assessment rendered services exclusively for Byrne Brothers. They employed others only on an occasional part-time basis. The only significant indicia of an independently established business was their investment of risk capital in equipment. The referee was in error in concluding that there was no investment of risk capital. In *Kirkpatrick,* the court clearly stated what was intended by the term "risk capital." It is capital invested for a profit where the investor assumes the risk of loss, as distinguished from the loan type transaction with a fixed rate of interest and an absence of significant risk. The owner-operators here invested risk capital. The majority is correct, however, in its analysis that the risk capital ventured is merely incidental to the value of the services provided. The principal thing being supplied is the personal services of the owner-operator. The capital ventured is not significantly greater than that ventured in *Baker* by the salesmen for automobiles and by the applicators for tools and trucks. The case clearly falls within the factual holding of *Baker.*

The record in this case however indicates the fallacy of the *Republic* rule as applied to future cases. Petitioner also presented evidence of two other contractors who perform hauling for Byrne Brothers, but are not subject to the assessment. Following the majority opinion and our rationale in *Republic,* the Employment Division would be justified in asserting assessments to include these two individuals. One contractor owns two trucks and trailers. He employs the drivers and pays unemployment taxes with respect thereto. He devotes a small amount of time to managing the business, but his principal time is devoted to his door building business. He testified that his investment in the trucks is merely one of several enterprises in which he has invested. Another contractor owns 14

[ 240 ]

trucks, some of which are contracted to Byrne Brothers and others to competitors. To conclude that these two individuals are "employes" of Byrne Brothers because they render a service used in the "ultimate product" is unjustified and contrary to the purpose of the Unemployment Compensation Act. We might as well include all corporate stockholders. The purpose of the Unemployment Compensation Act was not to protect the investments of capitalist entrepreneurs, but to protect working persons who do not have resources in times of unemployment. Indeed, hypothetically under *Republic,* if one individual owned all the trucks contracted to Byrne Trucking, he would be an employe of Byrne Trucking. A more rational approach, and certainly more consistent with *Baker,* would be to inquire under the hypothetical whether Byrne Brothers would not be the employe.

I do concur with *Republic* that some of the prior decisions of this court are probably in error and should not be considered as precedent for the future. These cases are *Klamath Dental Office, Inc. v. Morgan,* 19 Or App 521, 528 P2d 91 (1974); *Barger v. Morgan,* 13 Or App 111, 507 P2d 821, *rev den* (1973); *Michelet v. Morgan,* 11 Or App 79, 501 P2d 984 (1972); *Kuhlman v. Morgan,* 9 Or App 184, 496 P2d 246 (1972); *Culp v. Peet,* 3 Or App 406, 474 P2d 13 (1970). I would also probably include *Europorama v. Employment Division,* 22 Or App 431, 539 P2d 1157 (1975) in that group. The fundamental mistake we made in those cases is that we departed from *Baker.* The thrust of *Baker* is that petitioner must not only prove some independence, but a substantial degree thereof. There is, however, nothing in *Baker* to justify the overreaching rule propounded in *Republic.*