Argued July 12, affirmed December 5, 1978

# BYRNE TRUCKING, INC., *Petitioner,*
*v.*
# EMPLOYMENT DIVISION, *Respondent.*
## (No. 77-T-1, CA 8271, SC 25730*)

587 P2d 473

J. Terrance Bittner, Portland, and Willard E. Fox, Salem, argued the cause for petitioner. With Mr. Bittner on the briefs were Lynda Nelson Gardner, and Jones, Lang, Klein, Wolf & Smith, Portland.

Al J. Laue, Solicitor General, argued the cause for respondent. On the brief were James A. Redden,

Attorney General, W. Michael Gillette, then Solicitor General, and John W. Burgess, Assistant Attorney General, Salem.

Before Holman, Presiding Justice, and Tongue, Howell, Bryson, Lent and Linde, Justices.

HOLMAN, J.

---

*Consolidated with *Mitchell Bros. v. Emp. Div.,* 284 Or 449, 587 P2d 475 (SC 25729), and *Republic Dev. Co., Inc. v. Emp. Div.,* 284 Or 431, 587 P2d 466 (SC 25728) for argument.

## HOLMAN, J.

This case was accepted pursuant to a petition for review from a decision of the Court of Appeals, 32 Or App 229, 574 P2d 664 (1978). The issue was whether 4 individuals with whom petitioner had entered into hauling contracts rendered services to petitioner which consititute employment subjecting petitioner to liability for unemployment compensation taxes. This case was heard at the same time as the appeals in two similar cases, *Republic Dev. Co., Inc. v. Emp. Div.,* 284 Or 431, 587 P2d 466 (1978) and *Mitchell Bros. v. Emp. Div.,* 284 Or 449, 587 P2d 475 (1978). The opinions in those two cases are explanatory of and should be read together with our decision here.

The Court of Appeals stated the facts as follows:

"Petitioner is a common carrier operating in both interstate and intrastate commerce. When engaged in interstate commerce petitioner carries on its business by leasing trucks and trailers from owners-operators pursuant to standard hauling contracts. Petitioner also leases trucks of its own to haulers, on a lease-back arrangement, who then haul freight for petitioner on the same basis as the truckers who own their own equipment. These latter truck leases provide that the equipment shall be used exclusively in hauling contracts for Byrne Trucking. In the event the hauling contract is terminated the lease automatically terminates and the equipment is returned to Byrne Trucking. The leases also provide for a purchase option. It appears most of the lessees had exercised the option and were making payments to Byrne on their trucks.

"Byrne Trucking procures the freight to be hauled and collects the freight charges from the shippers. The freight haulers are paid 70 to 75 percent of the revenue received from each haul. From this amount the owner-operator is responsible for all expenses incident to operation of his equipment, wages for himself and any person he employs in carrying out his responsibilities under the hauling contract. The owner-operator is responsible for loading the freight and delivering it to its

[ 445 ]

destination. He has complete control of the methods of loading, the route selected and the hours he wishes to spend driving. He may maximize profits by reducing expenses and hauling more freight.

"The contracts provide '[c]ontractor [owner-operator] hereby agrees to furnish to Carrier for its exclusive use, the equipment described * * * and all labor sufficient for the use of the said equipment * * *.' The parties further agreed the owner-operators would place a sign on the truck identifying it as having been leased to petitioner. Byrne Trucking's I.C.C. number is also displayed on the truck." 32 Or App at 231-32.

■ All operators hauled exclusively for petitioner. They had no regular employes. The arrangement by which equipment was leased by petitioner to the operators who in turn leased it back to petitioner could have been found to be a subterfuge to make an employe who was operating petitioner's equipment appear to be something which he was not. In light of these lease arrangements, the Division and the referee were entitled to look with a jaundiced eye at those situations in which the equipment was purported to have been sold by petitioner to the operators who then leased it back to petitioner. In the absence of proof that the agreements concerning ownership rights to the trucks were actually honored and were not forgotten upon termination of the hauling arrangement and that the agreements were other than paper transactions, petitioner could be found not to have carried its burden of proof that the services rendered were other than employment. *See Mitchell Bros. v. Emp. Div., supra.*

The difficult questions are posed in those situations in which it was shown that the operators actually owned their equipment or were purchasing it from others than petitioner. The operators who did so invested captial and it could be argued that their trucks were more than equipment used as an incident to their provision of services to petitioner and that they thus had an independently established business.

However, this is only one of the major criteria for an independently established business as set forth in *Kirkpatrick v. Peet,* 247 Or 204, 428 P2d 405 (1967). In such a situation, taking into consideration the purpose of the Act, there was adequate justification for the Division and the referee to decide that the lessors were only using their equipment to make a job for themselves rather than that they were conducting an independently established business. The operators' testimony that if they were terminated by petitioner they would make a similar arrangement with another trucking firm is irrelevant. Any workman who loses his job can go to work for someone else—providing there is another job for him to go to. Unemployment compensation is designed to provide protection during those times when an arrangement cannot be made with another firm providing similar services because there is insufficient demand for similar services.

■ Considering the purpose of the Act and that the only principal factor favorable to the view that the operators had an independently established business was their investment of some capital, we cannot say under the test of *Kirkpatrick, supra,* that there was a lack of evidence to justify the determination of the Division and referee.

The decision of the Court of Appeals is affirmed.