# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-CC-01267-SCT

*MISSISSIPPI DEPARTMENT OF EMPLOYMENT SECURITY*

*v.*

*DOVER TRUCKING, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/16/2020 |
| TRIAL JUDGE: | HON. DAVID ANTHONY CHANDLER |
| TRIAL COURT ATTORNEYS: | JAMES GARY McGEE, JR. |
| | JAMES RANDALL BUSH |
| | ALBERT B. WHITE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ALBERT B. WHITE |
| ATTORNEY FOR APPELLEE: | JAMES GARY McGEE, JR. |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REVERSED. THE DECISION OF THE MISSISSIPPI DEPARTMENT OF EMPLOYMENT SECURITY IS REINSTATED AND AFFIRMED - 02/24/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE RANDOLPH, C.J., MAXWELL AND BEAM, JJ.

### BEAM, JUSTICE, FOR THE COURT:

¶1. The Mississippi Department of Employment Security (MDES) appeals from the circuit court's order reversing the MDES Board of Review's determination that Danny Leeton was an employee of Dover Trucking, LLC (Dover).

## FACTS AND PROCEDURAL HISTORY

¶2.     On November 25, 2015, Danny Leeton filed a claim for unemployment benefits with MDES. Leeton indicated that he worked for Dover as a truck driver from June 1, 2014, until he voluntarily quit on February 1, 2015.

¶3.     Leeton reported that he was paid in cash directly by the owner and did not receive an IRS Form W-2 from Dover. Since Dover reported no wages paid to Leeton, the MDES Audit & Compliance Department investigated the facts and circumstances surrounding Leeton's work for Dover. Tax field representative Jacqueline Profitt investigated by sending independent contractor questionnaires to Leeton and Dover. Dover returned its completed questionnaire to MDES on December 3, 2015. Leeton did not.

¶4.     Based on the investigation, Profitt recommended finding Leeton was an employee of Dover as a truck driver delivering loads for Dover. As a result, MDES issued and mailed an employee/employer relationship decision letter to Dover on December 15, 2015, finding Leeton and all similarly situated workers to be its employees under Mississippi Code Section 71-5-11(I)(14) (Rev. 2021). The letter informed Dover that it was obligated to file wage reports and pay taxes on all workers in this class.

¶5.     Aggrieved, Dover appealed the determination on December 21, 2015. On May 10, 2016, Tiffany Dover, co-owner of Dover Trucking, and Eldridge Rose, MDES tax department representative, testified. Leeton was contacted to participate, but he was not available.

¶6.     Based on the testimony and evidence presented during the hearing, the administrative law judge (ALJ) determined that an employer-employee relationship existed between Dover and Leeton.

¶7.     Aggrieved by the ALJ's decision, Dover appealed to the MDES Board of Review, which affirmed the decision of the ALJ and adopted its findings of fact.

¶8.     Aggrieved, Dover appealed the Board's decision to the Circuit Court of the First Judicial District of Hinds County.  Special Judge David Chandler heard the case and summarily reversed the MDES decision.

¶9.     MDES appealed to this Court.

## DISCUSSION

**Whether the circuit court erred by reversing the MDES Board's decision finding that an employer-employee relationship existed between Dover and Leeton.**

¶10.    A limited standard of review applies to appeals from administrative agencies, and an agency's decision will not be disturbed unless the decision "1) is not supported by substantial evidence; 2) is arbitrary or capricious, 3) is beyond the scope or power granted to the agency, or 4) violates one's constitutional rights." *Sprouse v. Miss. Emp. Sec. Comm'n*, 639 So. 2d 901, 902 (Miss. 1994) (citing *Miss. Comm'n on Env't Quality v. Chickasaw Cnty. Bd. of Supervisors*, 621 So. 2d 1211, 1215 (Miss. 1993)).  "A rebuttable presumption exists in favor of the agency, and the challenging party has the burden of proving otherwise." *Id.* (citing *United Cement Co. v. Safe Air for the Env't*, 558 So. 2d 840, 842 (Miss. 1990)).  "[I]n the absence of fraud, an order from a Board of Review of the Employment Security Commission

3

on the facts is conclusive in the lower court, if supported by substantial evidence." ***Miss.***

***Emp. Sec. Comm'n v. PDN, Inc.***, 586 So. 2d 838, 840 (Miss. 1991).

¶11.    The requirements to establish an employer-employee relationship are explained in

Section 71-5-11(I)(14) of the Mississippi Code:

> Services performed by an individual for wages shall be determined to be employment subject to this chapter unless and until it is shown to the satisfaction of the Commission that such individual has been and will continue to be free from control and direction over the performance of such services both under his contract of services and in fact; and the relation of employer and employee shall be determined in accordance with the principles of the common law governing the relation of master and servant.

Miss. Code Ann. § 71-5-11(I)(14) (Rev. 2021).

¶12.    Employee status is considered on a case-by-case basis.  ***Miss. Emp. Sec. Comm'n v.***

***Total Care, Inc.***, 586 So. 2d 834, 837 (Miss. 1991). "[Section 71-5-11(I)(14)] directs us to

the common-law principles of master and servant, and here we find a flexible, functional

test." ***Id.*** at 837.  The following factors are considered in determining whether an employer-

employee relationship exists:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or business:
>
> . . . .
>
> (d) the skill required in the particular occupation.
>
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work.
>
> (f) the length of time for which the person is employed.

4

(g) the method of payment, whether by the time or by the job.

(h) whether or not the work is a part of the regular business of the employer.

*Miss. Emp. Sec. Comm'n v. Plumbing Wholesale Co.*, 219 Miss. 724, 69 So. 2d 814, 818 (1954) (quoting Restatement of Agency § 2020).

¶13.  "Among the most prominent factors we have considered is 'control,' that is, to what extent does the putative employer control in substance and in detail the work activities of the person said to be an employee[?]" *Total Care*, 586 So. 2d at 837.

¶14.  Here, the evidence before the Commission consisted, for the most part, of testimony from Dover co-owner, Tiffany Dover and MDES representative, tax specialist Eldridge Rose.

¶15.  Tiffany Dover testified for the trucking company.  She stated that Leeton contacted Dover for work and submitted an application in accordance with federal Department of Transportation (DOT) Regulations. Dover and Leeton executed an agreement entitled "Self-Employment Tax Agreement," which stated he was self-employed and leased to Dover as a contract driver.  According to Dover, he would receive an IRS Form 1099 and be responsible for paying his own taxes.

¶16.  Dover testified that Leeton drove all types of routes, which were chosen at his discretion.  He was not required to report to any central location or obligated to haul or accept certain loads.  Dover explained that she personally did not have any contact with Leeton but that Dover used a dispatch company, Bluebird Express, which regularly communicated with its drivers.

¶17.    Dover provided an unsworn, signed, written statement from Gregory Luss, owner of Bluebird Xpress, regarding his communication practices with Leeton such that Leeton had the authority to accept or deny any load presented to him, that there was no set time he had to report in, and that Leeton was not on any type of schedule for hauling loads because doing so was at Leeton's discretion. He was not supervised by anyone nor did he have to report to anyone, but he did have to communicate with the dispatcher for loads. Leeton was also supposed to, at his discretion, notify the dispatcher if he would be out for a few days.

¶18.    Dover further testified that Leeton was not required to maintain and submit time sheets to Dover other than the logs required under federal DOT regulations. The ALJ asked Dover whether she had the right to terminate Leeton's services, and she stated that they could be terminated by either party at any time.

¶19.    Dover testified that it was responsible for providing the truck itself, but Leeton was responsible for any other tools or equipment he might need. Leeton was responsible for his own tarps and his own on-the-road expenses, for which he would not be reimbursed. Leeton drove a Dover-owned truck, which included the Dover name on the door, and he operated under Dover's federal DOT/MC number. Leeton was not required to wear a name badge or uniform.

¶20.    Dover explained that Leeton was in a minority of drivers who did not own his truck. Dover has multiple arrangements with its drivers including: (1) owner-operated truck drivers who are paid 80 percent of their loads hauled; and (2) lease-to-own drivers who operate a Dover-owned truck and pay a monthly lease payment. She did not testify that Leeton leased

6

to own or provided proof of a lease between Leeton and Dover, but on cross-examination, Dover confirmed that Leeton was not operating the truck under a lease-to-own arrangement.

¶21. The regular day-to-day maintenance on the Dover-owned truck was done at and by Dover's shop, but according to Dover, Leeton was not required to make the truck available to Dover at any certain time or day in order to conduct such maintenance. Leeton could have alternatively elected to receive 80 percent and be responsible for covering maintenance costs; however, he elected to receive 25 percent and not be responsible. Under that arrangement, Dover testified that the earnings from each load were distributed as follows: 25 percent earnings, less a 10 percent factoring fee, and a 4 percent dispatcher fee.

¶22. Lastly, Dover testified that Leeton was permitted to use Dover's truck to haul loads for his own contacts/customers. According to Dover, Leeton was free to hire someone to help him without the need for authorization from Dover.

¶23. MDES representative, tax specialist Eldridge Rose explained that the MDES evaluates an employment relationship using the common-law factors to determine whether an employer-employee relationship exists. Rose testified that Leeton reported he worked for Dover as an hourly wage truck driver. According to Leeton's application for unemployment benefits, he stated he operated a Dover-owned truck for which Dover covered the fuel, maintenance, and repairs.

¶24. Rose explained that typically truck drivers do not work normal business hours or have daily contact with the company, but the truck driver is to maintain regular contact. Rose further explained that many trucking companies have GPS trackers enabling them to track

7

their trucks, thus eliminating the need for regular communication.[1] While Leeton may have been free to accept other work, he would not likely have been able to do so because he was working full time for Dover, driving a Dover-owned truck, and performing services in its name. All of Leeton's time and efforts were, in reality, devoted to and controlled by Dover.

¶25. The ALJ concluded in its findings of fact, as adopted by the MDES Board of Review, that:

> Danny Leeton was involved in a business relationship with Dover Trucking . . . beginning on July 29, 2014. The company operates a trucking service to its clients. Mr. Leeton performed work as an over-the-road truck driver. Mr. Leeton went through the interview process prior to starting work.[2]
>
> Dover Trucking transports materials on long haul tractor trailers around the United States to its customers. Mr. Leeton performed work as an over-the-road truck driver picking up and dropping off products on a daily basis for Dover . . . though March 3, 2015. Dover Trucking used Blue Bird Express (a dispatching company) to dispatch truck drivers performing services for Dover Trucking. Mr. Leeton was not responsible for any maintenance costs or fuel while driving for the firm; however, he was given an advance of $100.00 for weekly expenses.[3]
>
> Mr. Leeton was required to have a valid Commercial Driver's License in order to perform services as a truck driver for Dover Trucking. A 10% factoring cost and a 4% dispatching cost were deducted prior to Mr. Leeton being compensated for his services. He received 25% of what was left over after the factoring and dispatch costs were deducted. Mr. Leeton was given daily instructions and specific routes and times to pick up and drop off products each day. The work performed by Mr. Leeton was not restricted to a specific area and he represented Dover Trucking while driving. If Mr. Leeton was not

---

[1] Dover testified it does not use GPS tracking.

[2] Dover testified there is no interview process, but Leeton contacted Dover for work, and he was required to submit an application to the DOT.

[3] No evidence of this is in the record.

8

available for work on a particular day, he was required to make Dover Trucking aware that he was not available.[4]

While Mr. Leeton performed services for Dover Trucking, he was not required to carry any type of liability insurance. Mr. Leeton was free to hold himself out to the public as a truck driver when he was not performing services for Dover Trucking.

For tax purposes, Mr. Leeton was given a form 1099. He operated tractor trailers under Dover Trucking's own Department of Transportation (DOT) number. Mr. Leeton did not place a bid for his work with Dover Trucking.

. . . .

Mr. Leeton performed work as an over-the-road truck driver for Dover Trucking at rate determined by the firm . . . . During this time, if Mr. Leeton stopped working for Dover Trucking, he would not suffer a loss, as would an independent contractor holding himself out to the general public. Dover Trucking did exercise control and direction through set wages and duties during this time period.

The work performed by Mr. Leeton was an integral part of the ongoing operation of Dover Trucking.

¶26. Under Section 71-5-11(I)(14), MDES found that there existed an employer-employee relationship between Dover and Leeton and all other individuals in this class. The Board of Review adopted the ALJ's findings.

¶27. The circuit court then summarily reversed. The circuit judge did not analyze or address the details of the MDES Board of Review and ALJ's findings. His order merely stated that "the ALJ and Board of Review's decisions are not supported by substantial evidence and should be reversed." MDES argues that without the circuit court articulating

---

[4] Dover testified, and Dover's dispatcher confirmed, that all communications are between the dispatcher and the truck driver.

9

any rationale for reversing the MDES decision, the circuit court acted arbitrarily and capriciously.

¶28. "The principle is well settled that an Order of the Board of Review on the facts is conclusive on the lower court, if supported by substantial evidence and if absent fraud." *Richardson v. Miss. Emp. Sec. Comm'n*, 593 So. 2d 31, 35 (Miss. 1992) (citing *Ray v. Bivens*, 562 So. 2d 119, 121 (Miss. 1990)). "Substantial evidence [is] 'such relevant evidence as reasonable minds might accept as adequate to support a conclusion.'" *Pub. Emps.' Ret. Sys. v. Marquez*, 774 So. 2d 421, 425 (Miss. 2001) (quoting *Delta CMI v. Speck*, 586 So. 2d 768, 768 (Miss. 1991)).

¶29. Substantial record evidence supported the agency's findings that Leeton was an employee. Here, the ALJ sifted the evidence, ultimately deeming Dover's overarching control over Leeton cut against the company's argument that he was an independent contractor. And MDES adopted these findings, which were supported by substantial evidence and were not arbitrary and capricious. Accordingly, the agency's decision should not have been disturbed, and the circuit judge erred for reversing it.

¶30. This Court has explained "the difficulty in applying these tests . . . ." *Richardson v. APAC-Miss.*, 631 So. 2d 143, 149 (Miss. 1994). "[O]n quite analogous factual situations" this Court has "reached opposite conclusions." *Id.*

¶31. In *Richardson v. APAC-Miss.*, the Court explained,

> In *Kisner* [*v. Jackson*, 159 Miss. 424 (1931)], we held a timber hauler an employee; in *McDonald v. Hall-Neely Lumber Co.*, 165 Miss. 143, 147 So. 315 (1933), he was an independent contractor. *See also* *Hinton v. Pearson*, 142 Miss. 50, 107 So. 275 (1926). Again in *Wade v. Traxler Gravel*, [232

10

Miss. 592, 100 So. 2d 103 (1958),] we held the owner of a gravel truck hauling gravel for a gravel company was an employee for workers' compensation purposes. *But see* **Leaf River Forest Products, Inc. v. Harrison**, 392 So. 2d 1138 (Miss. 1981) (where under similar circumstances, we held it was an independent contractor relationship); **Carr v. Crabtree**, 212 Miss. 656, 55 So. 2d 408 (1951) (same). *See also* **Powell v. Masonite Corp.**, 214 So. 2d 469 (Miss. 1968); **Hobbs v. International Paper Co.**, 203 So. 2d 488 (Miss. 1967); **Gulf Refining Co. v. Nations**, [145 So. 327 (1933)]; and **Shell Petroleum Corp. v. Linham**, 163 So. 839 (Miss. 1935) (reached opposite conclusion on whether filling station owner was employee of gasoline distributor).

*Id.*

¶32. While these cases involve workers' compensation and tort liability, this Court has never before considered whether a leased truck driver was an employee of an intestate motor carrier for MDES employment-tax purposes. MDES does cite two vicarious-liability cases for the proposition that a truck driver may be an independent contractor. But both cases differ from the scenario before us.

¶33. In **Webster v. Mississippi Publishers Corp.**, the driver owned his truck, paid maintenance insurance and expenses, negotiated contracts, rented office space, and contracted with publishers to make deliveries for it. **Webster v. Miss. Publishers Corp.**, 571 So. 2d 946 (Miss. 1990). There, the Court held he was not sufficiently under the publishers' control to be an employee. *Id.* at 950. In **Richardson**, the trucker, who was involved in an accident while on the job, owned his truck, paid all maintenance, insurance, and expenses, negotiated contracts, worked for APAC on an intermittent basis, and was engaged in the business of providing hauling services to more than one entity. **Richardson**, 631 So. 2d at 149. The Court held the trucker was an independent contractor. *Id.* at 144.

11

¶34. Again, the facts here differ materially because Leeton did not own his truck, nor did Leeton pay for maintenance or insurance. And Leeton had no authority to negotiate his rate with the customers. The closest Leeton came to negotiating pay was the arrangement he had with Dover regarding *his* overall pay scale. As for the specific loads, he could accept or decline the actual job, but the record does not evince that the pay was negotiable.

¶35. Because Mississippi is lacking case law on the matter, MDES asks that we consider ***Byrne Trucking, Inc. v. Employment Division***, 587 P. 2d 473 (Or. 1978) as persuasive precedent. There, the trucking company was a common carrier operating in both interstate and intrastate commerce, carrying out its business by entering into truck leasing agreements with owner-operators. *Id.* at 474. Byrne procured the freight and paid the freight haulers a percentage of the revenue from each load. *Id.* From there, the owner was responsible for all expenses incident to operating the truck including its control of the methods of loading, route selection and hours. *Id.* The lease agreement provided that the truck was furnished to Byrne for its exclusive use. *Id.*

¶36. In deciding that the truckers were employees, the Court noted the lease agreement did not simply contemplate leasing freight hauling equipment but personal services of the owner-operator. *Id.* at 447. The Court further noted that the owner rendered services exclusively for Byrne and the driver employed others only occasionally. *Id.* The Court affirmed the employment division's determination that single owner-operators were employees of Byrne. *Id.*

¶37. While this authority lends some guidance, the bottom line is that each employee-status case turns on its own facts. *See* **Total Care**, 586 So. 2d at 837 (employee status is considered on a case-by-case basis). And here, an objective review shows substantial evidence supported the agency's decision. There were substantial facts from which MDES reasonably concluded that Dover had the right to control Leeton in the performance of his work as a truck driver such that his status as a worker fell within the definition of an employee for purposes of unemployment compensation.

## CONCLUSION

¶38. Because the agency's decision was supported by substantial evidence and was not arbitrary or capricious, the circuit judge erred by reversing it. Accordingly, this Court reverses the decision of the circuit court and reinstates the decision of MDES.

¶39. **THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REVERSED. THE DECISION OF THE MISSISSIPPI DEPARTMENT OF EMPLOYMENT SECURITY IS REINSTATED AND AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**