# REPUBLIC DEVELOPMENT COMPANY, INC., *Petitioner,*

*v.*

# EMPLOYMENT DIVISION, *Respondent.*

(No. 76T-T-10, CA 8373, SC 25728*)

587 P2d 466

J. Terrance Bittner, Portland, and Willard E. Fox, Salem, argued the cause for petitioner. With Mr. Fox on the briefs was Allen, Stortz, Barlow, Fox & Susee, Salem.

Al J. Laue, Solicitor General, argued the cause for respondent. With him on the brief were James A.

Redden, Attorney General, and W. Benny Won, Assistant Attorney General, Salem.

Before Holman, Presiding Justice, and Tongue, Howell, Bryson, Lent and Linde, Justices.

HOLMAN, J.

---

*Consolidated with *Mitchell Bros. v. Emp. Div.,* 284 Or 449, 587 P2d 475 (SC 25729), and *Byrne Trucking, Inc. v. Emp. Div.,* 284 Or 443, 587 P2d 473 (SC 25730) for argument.

## HOLMAN, J.

This case was accepted pursuant to a petition for review from a decision of the Court of Appeals, 32 Or App 263, 574 P2d 660 (1978).[1] The issue is whether the petitioner is responsible for the payment of Unemployment Compensation taxes upon payments made to individuals with whom it had entered into contracts for work in the construction of houses. The statement of the case and the facts as set forth by the Court of Appeals have not been attacked by the petitioner. They are as follows:

"Petitioner's principal business is building so-called 'speculation homes.' The purported employes are all subcontractors in the building trades. On an annual basis petitioner surveys its market area to determine the going piecework prices for the performance of the various elements included in building houses. It then tenders to interested subcontractors a 'Proposal,' which they are free to accept or refuse. If a subcontractor accepts and executes a 'Proposal,' petitioner furnishes work to be done at the rate established by the survey. Each subcontractor has to give petitioner a one-year warranty on its work. The contract remains in force until a new rate is established. Subcontractors are free to work for other contractors, and some do, or for themselves independently, but the whole point of the method used by petitioner is to assure itself a work force at fixed rates by making available to its subcontractors a reasonably assured amount of work without the need to bid competitively for contracts.

"Involved are 13 individuals and partnerships who continuously or at various times during the relevant period performed services for petitioner under the described arrangements. * * *." 32 Or App 265-66.

This court took review because it had not construed the relevant statute, ORS 657.040, since it was

[1] At the same time this appeal was heard, appeals concerning two similar cases were heard in which opinions are simultaneously being rendered and which should be read together with this opinion. They are *Byrne Trucking, Inc. v. Emp. Div.,* 284 Or 443, 587 P2d 473 (1978), and *Mitchell Bros. v. Emp. Div.,* 284 Or 449, 587 P2d 475 (1978). — (1978).

[ 433 ]

amended in 1967,[2] and because the opinion of the Court of Appeals purports to disagree with our most recent interpretation prior to the effective date of the amendment.[3] The statute, as it presently exists, reads:

"Services performed by an individual for remuneration are deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the assistant director that:

"(1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(2)(a) Such individual customarily is engaged in an independently established business of the same nature as that involved in the contract of service; or

"(b) Such individual holds himself out as a contractor and employs one or more individuals to assist in the actual performance of services and who meets the following criteria shall be deemed to have an independently established business:

"(A) The individual customarily has two or more effective contracts.

"(B) The individual as a normal business practice utilizes separate telephone service, business cards and engages in such commercial advertising as is customary in operating similar businesses.

"(C) The individual is recognized by the Department of Revenue as an employer.

"(D) The individual furnishes substantially all of the equipment, tools and supplies necessary in carrying out his contractual obligations to his clients."

The amendment was for the purpose of attempting to define more clearly those services coming within the exemption so that persons entering into arrangements to secure or render services would be able to know with a greater degree of certainty whether or not the services would be deemed employment under the statute. Prior to its amendment, the wording was

---

[2] Oregon Laws 1967, ch 303, § 1.

[3] *Kirkpatrick v. Peet*, 247 Or 204, 428 P2d 405 (1967).

identical to the present statute through the first two subsections. Upon amendment what was formerly designated subsection (2) was redesignated (2)(a) and subsection (2)(b) was added. The amendment resulted in an ambiguous statute, as is not uncommon in legislation which results from compromises between the interests of industry and labor. If subsection (1) is satisfied, subsections (2)(a) and (2)(b) purport to be alternative qualifications for exemption from coverage, yet both of them, by their terms, purport to exempt services furnished by an "independently established business." Except for the use of "or" between subsections (2)(a) and (2)(b), one would conclude that subsection (2)(b) was setting forth the criteria for determining whether an individual was "engaged in an independently established business" under the provisions of (2)(a).

In this case subsection (2)(b) is not directly involved because petitioner makes no contention that it is exempted from payment under the test of that subsection. In addition, we can ignore subsection (1) because the Employment Division acknowledges that petitioner has brought itself within the provisions of that subsection.

An examination of the legislative history discloses quite clearly how the statute emerged in its present form. The opinion of the Court of Appeals correctly summarizes:

"* * * [T]he first legislative reaction was to eliminate subsection (2) entirely, leaving only the control and direction test of subsection (1). Then what is now subsection (2)(b) was proposed to replace former subsection (2), under which *Baker* [*v. Cameron,* 240 Or 354, 401 P2d 691 (1965)] was decided. Had that been done, there would have been reasonably certain standards for exemption, assuming control or direction existed and that every element had to be satisfied.

"The apparent difficulty with that approach which caused it to be abandoned by the legislature was that the substitution of the subsection (2)(b) language for old

subsection (2) would undoubtedly have destroyed existing exemptions recognized by the administrator or the courts. So the legislature retained old subsection (2) as subsection (2)(a) and added subsection (2)(b). * * * It was the intention of the legislature to create criteria by subsection (1) and (2)(b) which were definitive of eligibility in every instance where they are satisfied; * * *." 32 Or App at 271-72.

With this much of the Court of Appeals' analysis we agree.

The Court of Appeals, however, in deciding what is required for exemption under subsection (2)(a), discounted our holding in *Kirkpatrick v. Peet,* 247 Or 204, 428 P2d 405 (1967) and misconstrued our intention in *Baker v. Cameron,* 240 Or 354, 401 P2d 691 (1965), the last two decisions of this court to deal with subsection (2)(a) prior to the statute's amendment. *Kirkpatrick* was discounted with the following language:

"*Kirkpatrick v. Peet,* 247 Or 204, 428 P2d 405 (1967), with its talk about 'entrepreneurs,' 'risk capital,' 'employment of others' and the like is seemingly somewhat more definite in its language than *Baker* and also inconsistent with the approach suggested here. But it was decided before subsection (2)(b) was added to the statute covering the factors *Kirkpatrick* dealt with,[4] and for that reason alone, the case should not be regarded as meaningful as we have heretofore regarded it in some of our cases." 32 Or App at 271.

■ In essence, the Court of Appeals made the following analysis: *Kirkpatrick* interpreted what is now subsection (2)(a) prior to the addition of subsection (2)(b); subsection (2)(b) codified the factors *Kirkpatrick* indicated were significant; therefore, *Kirkpatrick* is no longer relevant if (2)(a) rather than (2)(b) is involved. We conclude, however, from the legislative history

---

[4]This could not have been a conscious codification of *Kirkpatrick v. Peet, supra* note 3, because the amendment adding subsection (2)(b) was signed by the Governor and filed with the Secretary of State on May 22, 1967, although it did not go into effect until September 13, 1967. *Kirkpatrick* was decided June 2, 1967.

that the 1967 amendment was not intended to establish a rigid analytical line between the criteria listed in (2)(b) and some more general test contained in subsection (2)(a).

First of all, the overlap between *Kirkpatrick* and subsection (2)(b) is incomplete. *Kirkpatrick* spoke of the investment of risk capital, the employment of others, and the performance of service for more than one person as indicia of an independently established business. Subsection (2)(b) mentions each of these three factors and three more besides: (1) individual holds himself out as a contractor; (2) individual as a normal business practice utilizes separate telephone service, business cards, and engages in such commercial advertising as is customary in operating similar businesses; (3) individual is recognized by the Department of Revenue as an employer. It is also worth noting that *Kirkpatrick* quoted in one of its footnotes a passage from the Federal Register.[5] That footnote mentions criteria which were not codified in subsection (2)(b).

■ More importantly, the legislative history of the 1967 amendments does not support the theory that the legislature intended for the tests contained in the two subsections to be mutually exclusive. The legislature wanted subsection (2)(b) to provide a list of criteria

---

[5] " ' * * * The typical independent contractor has a separate establishment distinct from the premises of the person for whom the services are performed; he performs services under an agreement to complete a specific 'job' or piece of work for a total remuneration or price agreed on in advance; at times and places and under conditions fixed by him, he offers his services to a public or customers of his own selection rather than a single person; neither he nor the person for whom the services are performed has the right to terminate the contract except for cause; he may delegate the performance of the services to helpers; he performs the services in or under his own name or trade name rather than in or under that of the person for whom the services are performed; the performance of the services supports or affects his own good will rather than that of the person for whom the services are performed; and he has a going business which he may sell to another.' 12 Fed. Reg. 7966 (Nov. 27, 1974)." *Kirkpatrick v. Peet,* 247 Or 204, 214 n.4, 428 P2d 405 (1967).

which would be absolutely determinative of the status of the individual in question if satisfied. However, we conclude the legislature did not intend for the addition of (2)(b) to mean that a court could not consider evidence going to those criteria, together with evidence of any other relevant criteria, if the person claiming the exemption could not satisfy all of (2)(b) and was relying on (2)(a) instead. We construe the legislative history to indicate clearly that subsection (2)(a) was to continue to be construed as it had been in the past. Both subsections seek to answer the same question and it is therefore difficult to see how one could draw the type of line between them which the Court of Appeals' opinion suggests. Because we believe it was not the intention that (2)(b) should eliminate the specific factors therein mentioned from consideration under (2)(a), the holding of *Kirkpatrick* cannot be disregarded.

After disregarding *Kirkpatrick*, the Court of Appeals decided that it is virtually impossible under *Baker* to exempt from the payment of the tax anyone who secured services from those who were "economically dependent" upon him for a market for their services. It enunciated a criterion under which the administrator was

> "to resolve the remaining problems [those who could not qualify for exemption under subsection (2)(b)] by a determination whether under the *Baker* rule the alleged employer was hiring services as services or whether he was buying an ultimate product or ultimate service. And, since in *Baker* the Supreme Court analyzed the relationships involved in a manner that was substantially all encompassing of every purchase of services utilized in the preparation of a product for the consumer of that product, the administrator's determination must stand if it was reasoned correctly by the service as service test." 32 Or App at 272.

Whether services are furnished as services may be relevant to the inquiry under subsection (2)(a), but it is not the sole consideration in the subsection's application. The use of the words "contract of service" in the

statute indicates that pure services may be rendered which are exempt from classification as employment. In addition, the statutory criterion is whether the services are furnished by "an independently established business." Such a business could still purvey "services as services" which are not an "ultimate product or ultimate service." Also, subsection (2)(a) emphasizes the manner in which the putative employe does business ("customarily engaged in an independently established business"); the services *qua* services test emphasizes the part the alleged employe plays in the claimed employer's business ("whether the alleged employer was hiring services as services or whether he was buying an ultimate product or ultimate service"). The thrust of the statute does not permit the proposed solution of the Court of Appeals to be the sole test.

■■ The need to implement a broad public policy, such as that encompassed within the Act, in a variety of differing factual situations makes it impossible to evolve a precise test. It is our conclusion that the following language from *Kirkpatrick* sets forth as clearly as possible the essence of the test of subsection (2)(a), taking into consideration the purpose of the Act:

> "Our previous cases make it clear that in using the word 'employment' in the Unemployment Insurance Act the legislature did not intend to incorporate the common law test for determining the master-servant relationship. Rather, the test is to be found by looking at the purpose of the Act. That purpose is served only if the Act is construed broadly enough to include persons who, although independent contractors according to the common law test, are peculiarly subjected to the hazard of unemployment because of the nature of their occupation.
> "* * * * *.
>
> "* * * We understand this part of the statute to mean that to exclude coverage it must be shown that the person engaged to perform services for another does so as an entrepreneur, i.e., where the enterprise calls for the investment of risk capital with the prospect of reaping returns or suffering a loss in the venture, the employment of others, and ordinarily the performance of service for more than one person. * * *.

[ 439 ]

"It is to be noted that the statute requires the occupation to be both 'independently established' and 'customarily' engaged in. This requirement is not met if the continued existence of the enterprise depends upon its relationship with a particular employer. If there is such dependence, the person employed does not have the prospect of supporting himself in the pursuit of his occupation if the person employing him terminates the relationship. It was the purpose of the Unemployment Insurance Act to provide relief where there was this type of risk of unemployment." 247 Or at 212-14.

■ Although the individual circumstances of those performing services in this case were not always alike, certain generalizations can be made. None of them regularly employed others. When they were not working for petitioner, they were doing similar work for other builders. The amount of time each spent in working for petitioner varied from full time to 30 per cent. Most of them did not have separate telephone service for their businesses. Few of them had business cards and most did not advertise. There is no indication that any of them were recognized by the Department of Revenue as employers. Although they all furnished their own tools and equipment, with one exception they furnished no materials other than such things as adhesives and nails.

Each individual owned the equipment and tools necessary to his specialty and had a van or pickup truck in which to carry the equipment to various job locations. None of them had a separate business establishment distinct from the premises of the person for whom the services were performed. Most worked out of their homes. The contracts between the petitioner and the individuals in question did not deal with specific jobs to be performed for a total remuneration or price agreed on in advance. The contracts only established a pay rate, with petitioner's being billed for each job according to the amount of work completed. None of the individuals had a business he could sell for anything beyond the value of his tools. Each

was skilled at a particular trade, such as finish work, cement laying, framing, etc.

Albeit all of the facts do not point the same way and several of the persons furnishing services to petitioner probably would have been classified as independent contractors had petitioner been charged with being responsible for their tortious conduct, it is our conclusion that the decision of the Division and the referee denying exemption to petitioner is justified by "substantial evidence in the whole record" supporting a proper application of the relevant statutory criteria.[6] ORS 657.679, 657.681(5), 657.683, 657.684,[7] and 183.482(8)(d).[8]

The decision of the Court of Appeals is affirmed.

---

[6] For the purpose of its petition for review, petitioner treated as a group the 13 persons whose services were held taxable to it. It did not ask that any individual exception be made, and the court, therefore, has treated the individuals as a group in this opinion. However, lest there be any misunderstanding, one of the 13 individuals was probably an independent contractor as a matter of law for the purposes of the Act. This exception was a man by the name of Madsen who poured concrete foundations for petitioner. He used business cards and had a business number listed in the yellow pages of the telephone directory. He did not spend his full time working for petitioner. Madsen furnished his own forms which he took with him from job to job and which he valued at $15,000. He furnished everything necessary for a completed job, including the concrete and foundation vents, and took the risks that were inherent in doing so.

[7] "Judicial review of decisions under ORS 657.683 shall be as provided for review of orders in contested cases in ORS 183.310 to 183.500, except that the petition shall be filed within 20 days after the order is final. * * *."

[8] "* * * * *.

"(8) The court may affirm, reverse or remand the order. The court shall reverse or remand the order only if it finds:
"* * * * *.

"(d) The order is not supported by substantial evidence in the whole record."