Argued February 27, reversed and remanded April 2, reconsideration
denied May 8, petition for review denied June 15, 1979

## EMPLOYMENT DIVISION, *Petitioner,*
*v.*
## JANITORIAL ENTERPRISES, INC., *Respondent.*
### (No. 77-T-71, CA 10921)

592 P2d 1068

W. Benny Won, Assistant Attorney General, Salem,
argued the cause for petitioner. With him on the brief
were James A. Redden, Attorney General, and Walter
L. Barrie, Solicitor General, Salem.

Timothy N. Brittle, Portland, argued the cause for
respondent. With him on the brief was Acker, Under-
wood, Beers, Smith & Warren, Portland.

Before Schwab, Chief Judge, and Buttler and
Joseph, Judges.

JOSEPH, J.

## JOSEPH, J.

The Employment Division issued a Notice of Deficiency Assessment and Tax Assessment to Janitorial Enterprises, Inc. (JE) with respect to some 189 persons alleged to be employees within the meaning of the Employment Division Law, ORS chapter 657. JE requested a hearing, claiming that the purported employees' services were excluded from coverage under ORS 657.040.[1]

A hearing was held. JE conceded that six of the persons named in the notice were employees, and their services are not involved in this appeal. The referee concluded that none of the other persons were employees and entered a decision setting aside the deficiency assessment. The Division appeals.

The referee's decision was given before the Supreme Court's decisions in *Republic Dev. Co., Inc. v. Emp. Div.*, 284 Or 431, 587 P2d 466 (1978), *Byrne Trucking, Inc. v. Emp. Div.*, 284 Or 443, 587 P2d 473

---

[1] ORS 657.040 provides:

"Services performed by an individual for remuneration are deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the assistant director that:

"(1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(2) (a) Such individual customarily is engaged in an independently established business of the same nature as that involved in the contract of service; or

"(b) Such individual holds himself out as a contractor and employs one or more individuals to assist in the actual performance of services and who meets the following criteria shall be deemed to have an independently established business:

"(A) The individual customarily has two or more effective contracts.

"(B) The individual as a normal business practice utilizes separate telephone service, business cards and engages in such commercial advertising as is customary in operating similar businesses.

"(C) The individual is recognized by the Department of Revenue as an employer.

"(D) The individual furnishes substantially all of the equipment, tools and supplies necessary in carrying out his contractual obligations to his clients."

(1978), and *Mitchell Bros. Truck Lines v. Emp. Div.,* 284 Or 449, 587 P2d 475 (1978). In *Republic* the Supreme Court reaffirmed the use of the test laid down in *Kirkpatrick v. Peet,* 247 Or 204, 212-14, 428 P2d 405 (1967).[2]

On review of the record, we conclude that JE did not satisfy its burden of proof. The referee's findings of fact[3] are agreed to be true and complete, but under the

---

[2]

"Our previous cases make it clear that in using the word 'employment' in the Unemployment Insurance Act the legislature did not intend to incorporate the common law test for determining the master-servant relationship. Rather, the test is to be found by looking at the purpose of the Act. That purpose is served only if the Act is construed broadly enough to include persons who, although independent contractors according to the common law test, are peculiarly subjected to the hazard of employment because of the nature of their occupation.
"*****.

"*** We understand this part of the statute to mean that to exclude coverage it must be shown that the person engaged to perform services for another does so as an entrepreneur, i.e., where the enterprise calls for the investment of risk capital with the prospect of reaping returns or suffering a loss in the venture, the employment of others, and ordinarily the performance of service for more than one person. ***.

"It is to be noted that the statute requires the occupation to be both 'independently established' and 'customarily' engaged in. This requirement is not met if the continued existence of the enterprise depends upon its relationship with a particular employer. If there is such dependence, the person employed does not have the prospect of supporting himself in the pursuit of his occupation if the person employing him terminates the relationship. It was the purpose of the Unemployment Insurance Act to provide relief where there was this type of risk of unemployment."

[3]

"*** (1) Plaintiff, Janitorial Enterprises, Inc. of Oregon, Portland, Oregon, has been an employer subject to the Employment Division Law since September 1, 1972. (2) During the period of time in issue herein (1974 through the first calendar quarter of 1977), plaintiff had a number of accounts for which it was to provide janitorial services in the Portland area. (3) Rather than furnishing any services itself, plaintiff would sell the account to a 'Purchaser' by means of an agreement similar to or identical with the one entered into with 'Bud Cox' on November 25, 1975. (4) The agreement granted unto Mr. Cox the right to service accounts of plaintiff which had a total monthly income of $8,000. (5) Mr. Cox was to receive the $8,000 from plaintiff minus a service charge of 10 percent. (6) In return for the service charge, plaintiff agreed to: 'supply management services including invoicing of the services, inspection reports, maintenance of records and insurance

rule in *Kirkpatrick* as applied in the 1978 Supreme Court decisions they do not reflect "substantial evidence in the whole record" (ORS 183.482(8)(d)) sufficient to support the decision.

The decision of the referee is reversed with respect to those employees of JE found to be exempt, and the matter is remanded to the referee to enter the appropriate decision.

Reversed and remanded.

---

($100 deductible)'. In addition, plaintiff agreed to: 'retain a percentage of the moneys collected and apply said moneys on account of payments due on the promissory note so long as some is outstanding'. (7) Mr. Cox's agreement called for payment by him to plaintiff of a purchase price of $36,000. (8) Upon any offer of sale of the agreement by 'the Purchaser', plaintiff had the first rights of purchase under a 7-day option provision. (9) In addition to Bud Cox, whose name appears on the employer's reports for the four calendar quarters of 1976, there were 182 individuals whose names are also listed on the two assessments who either singly, jointly or otherwise purchased janitorial accounts from plaintiff during the period of time in question herein. (10) Plaintiff's 'modus operandi' with each of the 'purchasers' was basically the same, with the individual furnishing all of his own equipment and supplies with which to do the work. (11) If the individual purchaser desired to have someone help him, he was at liberty to hire his own employes. (12) Although he could also set his own hours, the cleaning had to be done other than during office hours, which is what the accounts were, which meant it had to be between 6:00 p.m. and 8:00 a.m., Monday though Friday, but any hours of the day or night on weekends. (13) Plaintiff was not at liberty to dismiss a contractor other than for breach of contract in accordance with the terms of the purchase agreement. (14) If a contractor defaulted on his service requirements of the contract, then plaintiff was obligated to furnish substitute janitorial service for the accounts involved."