Argued and submitted February 7, affirmed September 3, reconsideration allowed
November 12, 1986, see 82 Or App 127 (1986)
Petition for review denied December 16, 1986 (302 Or 460)

In the Matter of the Deficiency
Assessment of Combined Transport, Inc.

COMBINED TRANSPORT, INC.,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION,
*Respondent.*

(84-T-72; CA A35561)

724 P2d 832

Daniel C. Thorndike, Medford, argued the cause for petitioner. With him on the brief was Blackhurst, Hornecker, Hassen & Brian, Medford.

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Joseph, Chief Judge, and Van Hoomissen and Young, Judges.

JOSEPH, C. J.

## JOSEPH, C. J.

Division served five notices of deficiency assessment on petitioner between March, 1983, and September, 1984. Petitioner requested hearings, contending that the individuals named in the assessments were not employes but independent contractors, that the assessments were based on an incorrect assumption that 25 percent of payments under certain lease agreements was wages and that, if the named individuals were employes, their wages were exempt from unemployment tax, because they were engaged in hauling activities outside the State of Oregon. The referee affirmed the assessments after removing charges related to individuals who worked entirely outside Oregon. We affirm.

Petitioner is an Oregon corporation engaged as an irregular route common carrier with general commodity authority in 48 states and intra-California. It solicits loads from shippers throughout its areas of authority, and it has the responsibility to license the trucks to operate where they take loads and to pay highway use taxes. It maintains a fleet of trucks by entering into equipment lease agreements with owner-operators who want to drive for it on a regular basis. It also enters into "trip leases" with drivers who contract to haul a specific load from one point to another. The deficiency assessments accepted by the referee are based only on the remuneration paid to owner-operators under the equipment lease agreements.

Petitioner argues that the remuneration is not taxable payroll, because the owner-operators fall within the independently established business exception of ORS 657.040(2)(a), even though those operations do not meet the specific standards for ORS 657.040(2)(b) exemptions.[1] It

---

[1] ORS 657.040 provides, in relevant part:

"Services performed by an individual for remuneration are deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the assistant director that:

"(1)   Such individual has been and will continue to be free from control or direction over the performance of such services, both under a contract of service and in fact; and

"(2)(a)   Such individual customarily is engaged in an independently established business of the same nature as that involved in the contract of service; or

"(b)   Such individual holds oneself out as a contractor and employs one or

claims that the referee erred in relying on *Byrne Trucking, Inc. v. Emp. Div.*, 284 Or 443, 447, 587 P2d 473 (1978), in which the court determined that, considering the purpose of the unemployment compensation law, imposition of the tax is appropriate when owner-operators use their trucks to make work available for themselves, rather than to conduct independently established businesses.

At the time that the Supreme Court decided that case, it also decided *Republic Dev. Co., Inc. v. Emp. Div.*, 284 Or 431, 587 P2d 466 (1978), and *Mitchell Bros. v. Emp. Div.*, 284 Or 449, 587 P2d 475 (1978), which it intended be read with *Byrne Trucking* for a full understanding. In *Republic Dev. Co.*, the court explained that, when the issue of an independently established business is raised under ORS 657.040(2)(a), the factors listed in ORS 657.040(2)(b) *and* the factors discussed in *Kirkpatrick v. Peet*, 247 Or 204, 213-215, 428 P2d 405 (1967), must be considered. 284 Or at 436-438.

Indicia of an independently established business, as set out in *Kirkpatrick*, include investment of risk capital, employment of others, performance of services for more than one person, separation of the business establishment from the premises of the person for whom the services are performed, remuneration for completion of a specific job at a price agreed on in advance, performance of services under an owner-operator's name instead of the person for whom the services are performed, offering services to the public or customers, performance of services affecting the good will of the owner-operators rather than that of the person for whom services are performed and whether the owner-operator has a saleable, going business concern. The word "employment" in the

---

more individuals to assist in the actual performance of services and who meets the following criteria shall be deemed to have an independently established business:

"(A)   The individual customarily has two or more effective contracts except when the individual performs services as a faller or bucker in the logging industry.

"(B)   The individual as a normal business practice utilizes separate telephone service, business cards and engages in such commercial advertising as is customary in operating similar businesses.

"(C)   The individual is recognized by the Department of Revenue as an employer.

"(D)   The individual furnishes substantially all of the equipment, tools and supplies necessary in carrying out the contractual obligations."

Unemployment Insurance Act does not incorporate the common law test for determining the master-servant relationship. *Republic Dev. Co., Inc. v. Emp. Div., supra,* 284 at 439.

The owner-operators whose remuneration is under review here have invested capital in their trucks. Petitioner's president testified that many owner-operators hire other drivers, but the record does not show the extent to which hired drivers were used. The agreement with the owner-operators gave petitioner the right to reject any driver. Many of the owner-operators used petitioner's bookkeeper for their record keeping, and petitioner billed them for the service. Under petitioner's load system, owner-operators were free to reject any load and haul for another carrier, and the testimony indicates that some did. Petitioner's president testified, however, that most of the owner-operators want to haul for petitioner whenever possible, because it pays a higher rate. The Division's auditor testified that the owner-operators involved in the assessments had no independent business offices. One indicated that he worked at petitioner's office. Under the equipment lease agreement, owner-operators do not know how much they will be paid for completing a specific hauling trip; remuneration is determined monthly, on the basis of gross revenue received by petitioner for the trips by each owner-operator.

Because they performed their services under petitioner's ICC permit, they always operated with petitioner's name on their trucks, although some also listed their own names. The owner-operators do not offer their services to the public. They do not advertise, and they have no business cards or business offices. The only way someone could contact one of them is by knowing the home telephone number. There is no evidence that services performed by owner-operators generate any good will that would accrue to any business of their own and, similarly, the record does not disclose any "going business" capable of being sold. All they have to sell is a truck, the value of which is unrelated to the performance of services for petitioner.

The record does not indicate whether any owner-operators had two or more contracts. It does show that none undertook separate advertising or had separate business telephones. The record also shows that only a few of them had

applied for employer identification numbers from Division. One was turned down, because he worked for petitioner; three others either had paid unemployment compensation taxes in the past or were paying taxes on the wages paid to their drivers. The owner-operators maintain their trucks, but petitioner pays all fuel costs, fuel taxes, road taxes, equipment use fees, equipment license fees, driver's license fees, permits, tolls and any other fees and fines assessed on the equipment being used for it. Petitioner also pays the insurance premiums on the leased trucks. We conclude that petitioner failed to prove that the owner-operators involved in the deficiency assessments conduct independently established businesses.[2]

■     Petitioner next argues that the referee erred in not remanding the assessments for further proceedings. It contends that at least 50 percent of the revenue against which the deficiency assessments were made was for trucking services performed entirely outside Oregon. The only evidence that petitioner provided to support that contention was the testimony of its president that, "as a conservative figure," more than 50 percent of the services performed never involved Oregon. It provided no evidence of which loads or which drivers were exempt.

Compensation for services is taxable if the services meet the definition of employment under ORS 657.035(1).[3]

---

[2] Petitioner also argues that the referee erred by not finding that owner-operators who owned more than one truck were independently established businesses. Petitioner relies on *Mitchell Bros. v. Emp. Div.*, 284 Or 449, 452, 587 P2d 475 (1978), in which the court stated:

"There can be no doubt that [when an owner-operator leases four or five trucks to petitioner] the lessors were conducting an independently established business venture in which they were not just making a job for themselves." (Brackets ours.)

Petitioner did not carry its burden of proof either as to the number of trucks owned by any lessor or as to whether any owner-operator leased more than one truck to petitioner.

[3] ORS 657.035(1) provides:

"The term 'employment' includes an individual's entire service, performed within, or both within and without, this state if:

"(a)     The service is localized in this state; or

"(b)     The service is not localized in any state, and such service is not covered under the unemployment compensation law of any other state, the Virgin Islands

The auditor testified that she only reviewed compensation for owner-operators that were dispatched from Oregon, hauls that ran through Oregon or Oregon-based operators. ORS 657.683(4) provides in relevant part that "the determination or assessment * * * shall be prima facie correct and the burden shall be upon the protesting employing unit to prove that it is incorrect." Petitioner failed to meet its burden.

■        Petitioner's second argument to support a remand is that the auditor did not undertake an independent analysis to determine what percent of compensation was actually wages; rather, she applied the 25 percent wage assumption stated in OAR 471-31-057(1).[4] The only evidence that petitioner produced to contravene that assumption was the unsupported testimony by a few owner-operators that they think that that percentage is too high and that they pay their own drivers about 15 percent. One owner-operator said he thought that he "clears" about 15 percent. Petitioner had the burden of proof. We agree with the referee that petitioner had the opportunity to present sufficient evidence to support its contention and, by failing to do so, failed to meet its burden of proof.

Affirmed.

---

or Canada, and

"(A)   The base of operations is in this state, or if there is no base of operations, then the place from which the service is directed or controlled is in this state, or

"(B)   The base of operations or place from which such service is directed or controlled is not in any state in which some part of the service is performed but the individual's residence is in this state."

[4] OAR 471-31-057(1) provides:

"If a person is found to be an employe under ORS Chapter 657 and is under contract, the terms of which require such individual to furnish a truck/tractor or other heavy equipment in addition to labor, 25% of the total payment under the contract is to be considered as wages."