VETERANS SERVICES, INC., Appellant,

v.

LABOR AND INDUSTRIAL RELATIONS COMMISSION OF MISSOURI and Missouri Division of Employment Security, Respondents.

No. WD 47217.

Missouri Court of Appeals, Western District.

Sept. 14, 1993.

Karen E. Milner, St. Louis, for appellant.

James B. Crenshaw, Jefferson City, for Labor & Indus. Relations Com'n.

Alan J. Downs, St. Louis, for Div. of Employment Sec.

Before SPINDEN, P.J., and FENNER and HANNA, JJ.

FENNER, Judge.

Appellant, Veterans Services, Inc., appeals from the judgment of the circuit court affirming the decision of respondent, Labor and Industrial Relations Commission (Commission). The issue involved herein is whether individuals hired by Veterans Services to conduct telephone solicitations for donations to Veterans Services are independent contractors or employees for purposes of the Missouri unemployment compensation laws. The Commission determined that said individuals were employees. The Commission's determination was affirmed on appeal to the circuit court and Veterans Services initiated this appeal.[1]

Veterans Services is engaged in the business of retail sales for the benefit of veterans. Veterans Services obtains donations of new and used goods from businesses and individuals which goods are then sold in its three retail stores. Among its other efforts to obtain donations of goods, Veterans Services hires individuals as solicitors to make telephone contacts seeking donations. Veterans Services has two categories of solicitors, field coordinators and field callers.

At the time of the hearing herein, Veterans Services had four field coordinators. Each month, field coordinators receive a number of pages from a public directory which lists individuals by name, address, and telephone from an area where Veterans Services' trucks will be picking up goods during the month. The field coordinators are advised as to what day a truck will be on a given street.

In the past, the lists were sometimes picked up from Veterans Services by the field coordinators and sometimes mailed to the field coordinators. Under current practice, the lists are sent to the field coordinators by courier. After receiving their lists, the field coordinators attempt to solicit donations from the individuals listed. Field coordinators generally engage the assistance of others referred to as field callers to call the individuals listed. In order to obtain the assistance of field callers, field coordinators are free to use whatever means they might choose. Some techniques used by field coordinators to secure field callers are advertising, posting notices, and word of mouth. Field coordinators sometimes obtain field callers by Veterans Services advising of individuals calling Veterans Services interested in work.

Field coordinators receive a sum designated as "ad money," regardless of whether they advertise or not. Ad money is determined by a formula based on the number of trucks picking up goods. Postage money is also provided to field coordinators on a formula basis.

Field coordinators decide without input from Veterans Services whether to hire a particular field caller. Veterans Services does not supply or direct any form of application for field callers. Field callers often have other jobs in addition to their work for Veterans Services. However, the record suggests that field callers are not allowed to do similar work for another group that solicits donations.

After field callers complete the telephone calls to the individuals listed, they report the addresses of the individuals who have items to donate to the field coordinators. The field coordinators keep track of this information and report it to Veterans Services' offices. Field coordinators and field callers are paid every two weeks.

When a Veterans Services' truck picks up saleable items at an address provided by a field coordinator, the coordinator is credited with a "good stop." If a field coordinator has 1–20 good stops per sheet of a list, they receive 10 cents per stop; if there are 21–27 good stops, they receive 15 cents per stop; if there are 28 or more good stops, they receive 20 cents per stop.

A new field caller receives a booklet from the field coordinator which lists the goods that Veterans Services will and will not accept. The booklet also has guidelines, which

1. This cause originated with a determination by the Missouri Division of Employment Security that individuals hired by Veterans Services to conduct telephone solicitations were employees. That determination was then reviewed by the Labor and Industrial Relations Commission pursuant to Veterans Services' request.

are not mandatory, as to the time of day most appropriate to make calls. Field callers set their own schedule and are free to have someone else make calls for them. They receive no supplies and no expense money from Veterans Services. They are paid on the basis of the number of good stops and are not entitled to draw on their commissions. Neither field coordinators nor field callers pick up donated goods.

## STANDARD OF REVIEW

■ On appeal from a decision of the circuit court affirming a decision of the Labor and Industrial Relations Commission, an appellate court reviews the decision of the Commission, not the decision of the circuit court. *Burns v. Labor & Indus. Relations Comm'n*, 845 S.W.2d 553, 554 (Mo. banc 1993). If supported by competent and substantial evidence and absent fraud, the findings of fact of the Commission are conclusive. *Id.* at 554–55. An appellate court reviews the evidence in the light most favorable to the findings and decision of the Commission and disregards all opposing and unfavorable evidence. *Id.* at 555.

### I  PRIOR TO JULY 1, 1989

In its first point on appeal, Veterans Services argues that the Labor and Industrial Relations Commission erred by finding that field coordinators and field callers were employees and not independent contractors pursuant to the statutory test of section 288.-034.5, RSMo 1986, in effect prior to July 1, 1989.[2]

Prior to July 1, 1989, section 288.034.5, RSMo 1986, provided as follows:

5. Irrespective of the usual tests for determining the existence of the independent contractor relationship as at common law, service performed by an individual for remuneration shall be deemed to be employment subject to this law unless it is shown to the satisfaction of the division that:

(1) Such individual has been and will continue to be free from control or di-

rection over the performance of such service, both under his contract of service and in fact; and

(2) Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

(3) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

■ All three subsections of section 288.-034.5, RSMo 1986, must be satisfied before an individual will be deemed an independent contractor. *Burns*, 845 S.W.2d at 556. The Commission determined that field coordinators and callers did not meet the requirements of subsections (1) and (3). There is no dispute that the field coordinators and callers meet the requirements of subsection (2).

■ We find that the field coordinators and callers do not meet the requirements of subsection (3). Since all three subsections must be satisfied, it is not necessary to analyze whether the requirements of subsection (1) are met.

Section 288.034.5(3) requires a showing that the individual is customarily engaged in an independently established trade, occupation, profession, or business. In *Koontz Aviation v. Labor & Industrial Relations Commission*, 650 S.W.2d 331, 334 (Mo.App.1983), this court cited with approval *Vermont Securities, Inc. v. Vermont Unemployment Compensation Commission*, 118 Vt. 196, 104 A.2d 915 (1954). *Vermont Securities* considered a statute worded identically to section 288.034.-5(3), RSMo 1986, and held that:

The adverb "independently" clearly modifies the word "established", and must carry the meaning that the trade, occupation, profession or business was established, independently of the employer or the rendering of the personal service forming the basis of the claim. The present tense "is" indicates the individual must be engaged in such independent activity at the time of

---

**2.** The statutory test was modified effective July 1, 1989. The current statutory test pursuant to section 288.034.5, RSMo Supp.1992, which be-

came effective, in part relevant herein, on July 1, 1989, is discussed under Veterans Services' second point in this appeal.

rendering the service involved. "Customarily" means usually, habitually, regularly. *Fuller Brush Co. v. Industrial Comm.*, 99 Utah 97, 104 P.2d 201, 129 A.L.R. 511. The language used contemplates that one engaged in an independently established trade, occupation, profession or business has a proprietary interest therein to the extent that he can operate it without hindrance from any individual whatsoever. *Murphy v. Daumit*, 387 Ill. 406, 56 N.E.2d 800; *Life & Casualty Ins. Co. v. Unemployment Compensation Comm.*, 178 Va. 46, 16 S.E.2d 357. An established business is one that is permanent, fixed, stable and lasting. *Unemployment Compensation Comm. v. Collins*, 182 Va. 426, 29 S.E.2d 388.

*Vermont Securities*, 104 A.2d at 917.

In *Koontz*, this court also held that the ultimate issue is whether the person performing the services is an entrepreneurial enterprise enjoying such a degree of economic independence that the enterprise can survive any relationship with the particular person contracting for the services. *Koontz Aviation*, 650 S.W.2d at 334 (citing *Revlon Service, Inc. v. Employment Division*, 30 Or.App. 729, 567 P.2d 1072, 1075 (1977)).

According to the criteria established in *Vermont Securities* and cited with approval in *Koontz*, Veterans Services did not show that the field coordinators and callers were established independently of Veterans Services. The record does not reflect that these individuals could operate their business as field coordinators or field callers without their relationship with Veterans Services, or with economic independence. The field coordinators and callers were dependent upon Veterans Services for their business. There was no evidence to show that the coordinators or callers performed similar services for others independent of Veterans Services. There was even testimony that the field callers were not allowed to make calls for other organizations which sought donations. The names for the coordinators and callers to contact were provided by Veterans Services and the coordinators and callers were re-

quired to meet the pickup schedules as determined by Veterans Services. The record does not reflect that the business of these individuals as coordinators or callers could have survived or even had any existence independent of Veterans Services.

There was competent and substantial evidence to support the decision of the Labor and Industrial Relations Commission that the field coordinators and callers were employees and not independent contractors pursuant to the criteria established under section 288.-034.5, RSMo 1986, as effective prior to July 1, 1989.

Veterans Services' first point is denied.

## II SUBSEQUENT TO JUNE 30, 1989

In its second point, Veterans Services argues that the Labor and Industrial Relations Commission erred by finding that field coordinators and field callers were employees and not independent contractors pursuant to the statutory test of section 288.034.5, RSMo Supp.1992, in effect subsequent to June 30, 1989.

In its current form, effective subsequent to June 30, 1989, section 288.034.5, RSMo Supp. 1992, provides as follows:

Service performed by an individual for remuneration shall be deemed to be employment subject to this law unless it is shown to the satisfaction of the division that such services were performed by an independent contractor. In determining the existence of the independent contractor relationship, the common law of agency right to control shall be applied. The common law of agency right to control test shall include but not be limited to: If the alleged employer retains the right to control the manner and means by which the results are to be accomplished, the individual who performs the service is an employee. If only the results are controlled, the individual performing the service is an independent contractor.

In interpreting section 288.034.5, the Code of State Regulations at 8 C.S.R. 10-4.150(1) provides as follows: [3]

3. Pursuant to section 288.220.5, the Director of

the Division of Employment Security of the De-

In order to interpret section 288.034.5, RSMo (Cum.Supp.1989), effective June 30, 1989, the division shall apply the common law rules applicable in determining the employer-employee relationship under 26 U.S.C. Section 3306(i). In applying the provisions of 26 U.S.C. § 3306(i), the division shall consider the case law, Internal Revenue Service regulations and Internal Revenue Service letter rulings interpreting and applying that subsection.

Title 26 of the United States Code §§ 3101 to 5000, consists of the Internal Revenue Code. 26 U.S.C. § 3306(i) defines "employee" generally as an individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee.

■ To determine whether a particular worker or group of workers should be considered employees or independent contractors, the Internal Revenue Service has identified twenty separate factors to be considered and weighed. These twenty factors, pursuant to I.R.S. Revenue Ruling 87–41, together with our analysis of the relationship of these factors to the job circumstances of field coordinators and callers, are as follows:

1. INSTRUCTIONS. A worker who is required to comply with other persons' instructions about when, where, and how he or she is to work is ordinarily an employee. This control factor is present if the person or persons for whom the services are performed have the RIGHT to require compliance with instructions. See, for example, Rev.Rul. 68–598, 1968–2 C.B. 464, and Rev.Rul. 66–381, 1966–2 C.B. 449.

When a new field coordinator begins, they are given oral instructions on how the Veterans Services' phone solicitation and pickup system works. Additionally, each person starting with Veterans Services receives a training manual that advises what goods Veterans Services will accept, what to say to people on the phone, and when best to call. The field callers are also told to make reminder calls just before goods are to be picked up to assure that donors do not forget the pickup schedule. The field coordinators are given sheets with names to be called that the field coordinators pass on to the field callers. After the field callers make the calls to the individuals listed, they give the addresses of the individuals who have items to donate to the field coordinators, who, in turn, report this information to Veterans Services. The number of sheets a field coordinator gets is determined by the Veterans Services' office. Calls are restricted to the names provided in order to coincide with the Veterans Services' pickup schedule.

The record reflects that there is a tangible system by which field coordinators and field callers work. Even though field coordinators and field callers enjoy a certain amount of freedom in their work for Veterans Services, they are also given certain instructions that they must follow. Thus, this factor weighs somewhat against Veterans Services' position that the coordinators and callers are independent contractors.

2. TRAINING. Training a worker by requiring an experienced employee to work with the worker, by corresponding with the worker, by requiring the worker to attend meetings, or by using other methods, indicates that the person or persons for whom the services are performed want the services performed in a particular method or manner. See Rev.Rul. 70–630, 1970–2 C.B. 229.

The training given to new workers in the case at bar consists of oral instructions on the Veterans Services' phone solicitation and pickup system and a training manual. The training manual advises what goods Veterans Services will accept, what callers are to say when soliciting donations, and when best to make calls. The record reflects that two years ago Veterans Services held a training seminar for coordinators and callers. The training seminar basically covered the material in the training manual and attendance was not mandatory. Thus, while training for field coordinators and field callers exists, it is by no means extensive. Rather, it is minimal.

partment of Labor and Industrial Relations, with the approval of the Commission, has the power to adopt regulations as necessary to implement state laws in relation to employment security.

Nonetheless, since Veterans Services did provide some form of training, this factor weighs somewhat against Veterans Services' position that the coordinators and callers are independent contractors.

3. INTEGRATION. Integration of the worker's services into the business operations generally shows that the worker is subject to direction and control. When the success or continuation of a business depends to an appreciable degree upon the performance of certain services, the workers who perform those services must necessarily be subject to a certain amount of control by the owner of the business. See *United States v. Silk,* 331 U.S. 704 [67 S.Ct. 1463, 91 L.Ed. 1757] (1947), 1947–2 C.B. 167.

The majority of the donations Veterans Services receives are obtained by the field coordinators and field callers. The Veterans Services' operation could not continue as it exists now without the field coordinators and callers.

This factor weighs against Veterans Services' position that the coordinators and callers are independent contractors.

4. SERVICES RENDERED PERSONALLY. If the Services must be rendered personally, presumably the person or persons for whom the services are performed are interested in the methods used to accomplish the work as well as in the results. See Rev.Rul. 55–695, 1955–2 C.B. 410.

The record reflects that a field coordinator could not use a substitute because the varied job duties required training. There was also testimony from one of the field callers that she had been instructed to make her calls personally. However, the responsibilities of a field caller would not dictate that calls be made personally. In fact, the record shows that field callers are free to have someone else make calls for them.

This factor weighs against Veterans Services' position in regard to field coordinators as well as any field callers who were required to make calls personally. However, since there was no evidence of an established policy requiring field callers to make calls personally, this factor weighs in favor of Veterans Services' position in regard to field callers generally.

5. HIRING, SUPERVISING, AND PAYING ASSISTANTS. If the person or persons for whom the services are performed hire, supervise, and pay assistants, that factor generally shows control over the workers on the job. However, if one worker hires, supervises, and pays the other assistants pursuant to a contract under which the worker agrees to provide materials and labor and under which the worker is responsible only for the attainment of a result, this factor indicates an independent contractor status. Compare Rev.Rul. 63–116, 1963–1 C.B. 178, with Rev.Rul. 55–593 1955–2 C.B. 610.

Veterans Services hires the field coordinators and the field coordinators hire the field callers. Field coordinators are free to use whatever means they choose to obtain the assistance of field callers. They decide whether to hire the field callers without any input from Veterans Services. The field coordinators also supervise the field callers. However, Veterans Services pays both the coordinators and the callers.

This factor is somewhat neutral. Even though the field coordinators hire and supervise the callers, Veterans Services pays both coordinators and callers.

6. CONTINUING RELATIONSHIP. A continuing relationship between the worker and the person or persons for whom the services are performed indicates that an employer-employee relationship exists. A continuing relationship may exist where work is performed at frequently recurring although irregular intervals. See United States v. Silk.

The record reflects a stable relationship over a course of years between Veterans Services and some field coordinators and callers. There was also evidence that some callers did not continue for a long period of time and that there was considerable turnover among callers. The record seems to reflect more stability among field coordinators than among field callers.

This factor weighs against Veterans Services in regard to field coordinators but in favor of Veterans Services in regard to field callers.

7. SET HOURS OF WORK. The establishment of set hours of work by the person or persons for whom the services are performed is a factor indicating control. See Rev.Rul. 73–591, 1973–2 C.B. 337.

Neither the coordinators nor the callers have set hours of work.

This factor weighs in favor of Veterans Services' position.

8. FULL TIME REQUIRED. If the worker must devote substantially full time to the business of the person or persons for whom the services are performed, such person or persons have control over the amount of time the worker spends working and impliedly restrict the worker from doing other gainful work. An independent contractor on the other hand, is free to work when and for whom he or she chooses. See Rev.Rul. 56–694, 1956–2 C.B. 694.

Field coordinators and callers are not required to devote full time to their efforts on behalf of Veterans Services. They are allowed other employment as long as it does not conflict with what they are doing on behalf of Veterans Services.

This factor weighs in favor of Veterans Services' position.

9. DOING WORK ON EMPLOYER'S PREMISES. If the work is performed on the premises of the person or persons for whom the services are performed, that factor suggests control over the worker, especially if the work could be done elsewhere. Rev.Rul. 56–660, 1956–2 C.B. 693. Work done off the premises of the person or persons receiving the services, such as at the office of the worker, indicates some freedom from control. However, this fact by itself does not mean that the worker is not an employee. The importance of this factor depends on the nature of the service involved and the extent to which an employer generally would require that employees perform such services on the employer's premises. Control over the place

of work is indicated when the person or persons for whom the services are performed have the right to compel the worker to travel a designated route, to canvass a territory within a certain time, or to work at specific places as required. See Rev.Rul. 56–694.

Field coordinators and callers work from home, not from the premises of Veterans Services. While they are arguably required to "canvass a territory within a certain time," they need not travel a designated route or work at specific places. They only need to contact individuals on the lists provided who are from areas where Veterans Services' trucks pick up the donated goods. It is not the coordinators and callers that need to be located in a certain area; rather, it is the individuals making the donations who must be in the area where Veterans Services' trucks pick up the donated goods.

This factor weighs in favor of Veterans Services' position.

10. ORDER OR SEQUENCE SET. If a worker must perform services in the order or sequence set by the person or persons for whom the services are performed, that factor shows that the worker is not free to follow the worker's own pattern of work but must follow the established routines and schedules of the person or persons for whom the services are performed. Often, because of the nature of an occupation, the person or persons for whom the services are performed do not set the order of the services or set the order infrequently. It is sufficient to show control, however, if such person or persons retain the right to do so. See Rev.Rul. 56–694.

Veterans Services establishes the pickup schedule which thereby establishes the sequence in which the coordinators and callers must perform their tasks.

This factor weighs against Veterans Services' position.

11. ORAL OR WRITTEN REPORTS. A requirement that the worker submit regular or written reports to the person or persons for whom the services are performed indicates a degree of control. See

Rev.Rul. 70–309, 1970–1 C.B. 199, and Rev. Rul. 68–248, 1968–1 C.B. 431.

Field callers must report orally to their field coordinator at least two days prior to scheduled pickup providing the names and addresses of donors. Both Veterans Services and the field coordinators keep a record of the number of good stops attributable to an individual caller.

This factor weighs against Veterans Services' position.

12. PAYMENT BY HOUR, WEEK, MONTH. Payment by the hour, week, or month generally points to an employer-employee relationship, provided that this method of payment is not just a convenient way of paying a lump sum agreed upon as the cost of a job. Payment made by the job or on a straight commission generally indicates that the worker is an independent contractor. See Rev.Rul. 74–389, 1974–2 C.B. 330.

Field coordinators and callers are paid on a commission basis relevant to the number of individuals they contact who ultimately donate goods.

This factor supports Veterans Services' position.

13. PAYMENT OF BUSINESS AND/OR TRAVELING EXPENSES. If the person or persons for whom the services are performed ordinarily pay the worker's business and/or traveling expenses, the worker is ordinarily an employee. An employer, to be able to control expenses, generally retains the right to regulate and direct the worker's business activities. See Rev.Rul. 55–144, 1955–1 C.B. 483.

Field coordinators receive postage and advertising money. Veterans Services has also reimbursed a field coordinator for long distance phone charges in relation to her job. There is no evidence of any expense reimbursement for field callers. In fact, the record shows that field callers receive no supplies or expense money from Veterans Services.

This factor weighs against Veterans Services in regard to field coordinators and in support of Veterans Services' position in regard to field callers.

14. FURNISHING OF TOOLS AND MATERIALS. The fact that the person or persons for whom the services are performed furnish significant tools, materials, and other equipment tends to show the existence of an employer-employee relationship. See Rev.Rul. 71–524, 1971–2 C.B. 346.

Veterans Services furnishes envelopes to field coordinators for their use in sending lists to field callers. However, the primary or significant "tool" used by coordinators and callers is the telephone which the workers provide themselves.

This factor supports Veterans Services' position.

15. SIGNIFICANT INVESTMENT. If the worker invests in facilities that are used by the worker in performing services and are not typically maintained by employees (such as the maintenance of an office rented at fair market value from an unrelated party), that factor tends to indicate that the worker is an independent contractor. On the other hand, lack of investment in facilities indicates dependence on the person or persons for whom the services are performed for such facilities and, accordingly, the existence of an employer-employee relationship. See Rev. Rul. 71–524. Special scrutiny is required with respect to certain types of facilities, such as home offices.

Neither coordinators nor callers have any significant investment in relation to their work. However, even though there is a lack of investment, they do not rely on Veterans Services for facilities from which to do their work. Thus, there is no dependence on Veterans Services for facilities.

This factor weighs somewhat in favor of Veterans Services' position.

16. REALIZATION OF PROFIT OR LOSS. A worker who can realize a profit or suffer a loss as a result of the worker's services (in addition to the profit or loss ordinarily realized by employees) is generally an independent contractor, but the worker who cannot is an employee. See Rev.Rul. 70–309. For example, if the worker is subject to a real risk of economic

loss due to significant investments or a bona fide liability for expenses, such as salary payments to unrelated employees, that factor indicates that the worker is an independent contractor. The risk that a worker will not receive payment for his or her services, however, is common to both independent contractors and employees and thus does not constitute a sufficient economic risk to support treatment as an independent contractor.

The field coordinators and callers are not in a situation where they may realize a profit or suffer a loss. They work on a set commission basis and are not exposed to a loss potential.

This factor weighs against Veterans Services.

17. WORKING FOR MORE THAN ONE FIRM AT A TIME. If a worker performs more than de minimis services for a multiple of unrelated persons or firms at the same time, that factor generally indicates that the worker is an independent contractor. See Rev.Rul. 70-572, 1970-2 C.B. 221. However, a worker who performs services for more than one person may be an employee of each of the persons, especially where such persons are part of the same service arrangement.

There was no evidence that any field coordinators or callers work as telephone solicitors for any other organization while working for Veterans Services. In fact, the evidence shows that they were not allowed to work for any competing organization.

This factor weighs against Veterans Services.

18. MAKING SERVICE AVAILABLE TO GENERAL PUBLIC. The fact that a worker makes his or her services available to the general public on a regular and consistent basis indicates an independent contractor relationship. See Rev.Rul. 56-660.

The record does not reflect that field coordinators or callers make their services available to the general public.

This factor weighs against Veterans Services.

19. RIGHT TO DISCHARGE. The right to discharge a worker is a factor indicating that the worker is an employee and the person possessing the right is an employer. An employer exercises control through the threat of dismissal, which causes the worker to obey the employer's instructions. An independent contractor, on the other hand, cannot be fired so long as the independent contractor produces a result that meets the contract specifications. Rev.Rul. 75-41, 1975-1 C.B. 323.

The record reflects that field coordinators and callers are subject to discharge at the will of Veterans Services. There is no formal contract between the parties.

This factor weighs against Veterans Services.

20. RIGHT TO TERMINATE. If the worker has the right to end his or her relationship with the person for whom the services are performed at any time he or she wishes without incurring liability, that factor indicates an employer-employee relationship. See Rev.Rul. 70-309.

The record reflects that coordinators and callers are free to terminate their relationship with Veterans Services at any time they choose without legal liability.

This factor weighs against Veterans Services.

Of the twenty factors considered, we found one to be neutral and thirteen to weigh against Veterans Services' position that field coordinators are independent contractors. There are six factors that support Veterans Services' position in regard to field coordinators. Eleven factors weigh against Veterans Services' position that field callers are independent contractors, with one of those eleven factors weighing against Veterans Services only in relation to some field callers, but not all. There are eight factors that support Veterans Services' position in regard to field callers.

This is a relatively close case and it could have been decided differently by the Commission, particularly in regard to individuals working as field callers. Nonetheless, considering the twenty factor balancing approach and the standard of review, the rec-

ord supports the Commission's finding that Veterans Services had an employer-employee relationship with its field coordinators and field callers. There was competent and substantial evidence to support the Commission's decision and the circuit court did not err by affirming the decision of the Commission.

Judgment affirmed.

All concur.