EDWARD LOWE INDUSTRIES,
INC., Petitioner–Respondent,

v.

MISSOURI DIVISION OF EMPLOY-
MENT SECURITY, Labor and Industri-
al Relations Commission of Missouri,
Respondents–Appellants,

and

Zeta Simms, Respondent.

No. 18587.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 23, 1993.

Larry R. Ruhmann, St. Louis, for respondent-appellant Div. of Employment Sec.

James B. Crenshaw, Jefferson City, for respondent-appellant Labor and Indus. Relations Com'n.

J. Michael Howard, Marcia A. Mulcahy, Limbaugh, Russell, Payne & Howard, Cape Girardeau, for petitioner-respondent.

FLANIGAN, Presiding Judge.

Zeta Simms filed a claim for unemployment benefits under the Missouri Employment Security Law [Ch. 288 RSMo][1] ("the Act"), based upon services performed by her, for pay, for Edward Lowe Industries, Inc. ("Lowe"). The Labor and Industrial Relations Commission of Missouri determined that Simms was entitled to a wage credit in the amount of $145 for the quarter ending September 30, 1989. The Commission found that the services which Simms performed for Lowe were "employment" subject to the Act, and rejected Lowe's contention that Simms was an independent contractor and not its employee within § 288.034.5, as amended June 30, 1989. The Commission also rejected Lowe's contention that the services performed by Simms were excluded from the definition of "employment" by reason of § 288.034.12(17).

Pursuant to § 288.210, Lowe filed a petition for review in the Circuit Court of Scott County. The court entered an order reversing the findings of the Commission. The Commission appeals. The Missouri Division of Employment Security is also an appellant and joins in the Commission's brief.

The Commission contends that the circuit court erred in reversing two findings of the Commission for the reason that the findings were supported by competent and substantial evidence and were correct as a matter of law. Those findings are: (1) the services performed by Simms for Lowe were performed by her as an employee and not as an independent contractor within the meaning of § 288.034.5, as amended 1989; (2) the services performed by Simms for Lowe were not within the exclusion contained in § 288.034.-12(17).

■ On this appeal, this court reviews the decision of the Commission, and not the judgment of the circuit court. *Burns v. Labor & Indus. Relations Com'n,* 845 S.W.2d 553, 554–555[1] (Mo. banc 1993). The findings of the Commission as to facts, if supported by competent and substantial evidence and in the absence of fraud, are conclusive. This court reviews the evidence in a light most favorable to the findings and decision of the Commission and must disregard all opposing and unfavorable evidence. *Id.* This court is not bound on the Commission's findings on questions of law. *Kansas City Club v. LIRC,* 840 S.W.2d 273, 275[2] (Mo. App.1992); *St. John's Reg. Medical Center v. LIRC,* 814 S.W.2d 698, 699[1] (Mo.App.1991).

*Employee or Independent Contractor?*

Section 288.034.5, as amended effective June 30, 1989, reads:

5. Service performed by an individual for remuneration shall be deemed to be employment subject to this law unless it is shown to the satisfaction of the division that such services were performed by an independent contractor. In determining the existence of the independent contractor relationship, the common law of agency right to control shall be applied. The common law of agency right to control test shall include but not be limited to: If the

---

1. Except where otherwise indicated, all references to statutes are to RSMo 1986, V.A.M.S.

alleged employer retains the right to control the manner and means by which the results are to be accomplished, the individual who performs the service is an employee. If only the results are controlled, the individual performing the service is an independent contractor.

In *Burns*, 845 S.W.2d at 557, the court said: "In 1989, the three part test of § 288.-034.5 was amended, and a single test was substituted, which applies 'the common law of agency right to control' test.... The amendment is clearly substantive and it therefore may not be retroactive."[2]

Referring to § 288.034.5, as amended 1989, in *Division of Employment Security v. Hatfield*, 831 S.W.2d 216 (Mo.App.1992), the court said, at 218–219:

Under the authority provided by the legislature, the director of the Division of Employment Security has promulgated regulations to efficiently and properly administer this statute. § 288.220.5. The relevant regulation provides in pertinent part:

In order to interpret Section 288.-034.5, RSMo (Supp.1989), effective June 30, 1989, the Division shall apply the common law rules applicable in determining the employer-employee relationship under 26 USC Section 3306(i). In applying the provisions of USC Section 3306(i), the Division shall consider the case law, Internal Revenue Regulations and Internal Revenue Service Letter Rulings interpreting and applying that subsection.

8 C.S.R. 10–4.150.

Section 3306(i) of Chapter 26 of the United States Code adopts the definition of employee assigned by § 3121(d), which provides that the term employee means "an individual who, under the common law

rules applicable in determining the employer-employee relationship, has the status of an employee." 26 U.S.C. § 3121(d)(2).

In a recent decision, the United States Supreme Court examined whether a party hired to produce copyrighted work is an employee under the general common law of agency. *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). In its analysis, the Court listed the following relevant factors for determining the party's status:

[T]he skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and · tax treatment of the hired party.

The Court also referred the reader to the Restatement (Second) of Agency § 220(2) for a non-exhaustive list of factors relevant to determine whether a party is an employee. *Id.* [490 U.S. at 749–53] 109 S.Ct. at 2178–79. No single factor is determinative.

In *Veterans Services, Inc. v. Labor & Ind. Rel. Com'n*, 861 S.W.2d 781 (Mo.App.1993), the court said that the Internal Revenue Service, in IRS Ruling 87–41, identified 20 separate factors to be considered and weighed in determining whether a particular worker should be considered an employee or an independent contractor. These factors will be set forth later in this opinion.

**2.** The Commission also found that Simms was entitled to a wage credit for $90 for the quarter ending June 30, 1989. At oral argument, counsel for Lowe conceded that the Commission did not err in making that finding and that the circuit court erred in reversing it. That finding was based on the pre-June 30, 1989, version of § 288.034.5. For the test for determining the existence of the independent contractor relationship under that version of the statute, see *Missouri Shelfco, Inc. v. LIRC*, 849 S.W.2d 245, 248–249 (Mo.App.1993).

There is no factual dispute. Lowe is an Indiana corporation, authorized to conduct business in Missouri, which develops, manufactures and markets pet and agricultural products. Its major product is cat litter. Lowe owns a research and development center in Cape Girardeau where Lowe engages the services of consumers to conduct studies to evaluate cat litter. Using the results of these studies, Lowe determines what product to manufacture and market. Prior to 1984, Lowe used research conducted by independent research companies. Since that time, Lowe has utilized the consumers.

Each study is conducted over a 15-day period by a panel consisting of 42 consumers. Lowe then considers the reports of 40 of the participating panelists. The reports of the other two panelists are considered only if needed to make up the 40. All panelists are given the same instructions, which do not change during a study period.

The instructions given to each panelist are contained on a form entitled "Panelist Questionnaire," Exhibit E–3. Each panelist is instructed to sniff used or "soiled" samples of cat litter. The instructions read: "After sniffing each sample, PLEASE indicate the FECAL/URINE ODOR intensity, AMMONIA ODOR, FRAGRANCE intensity, and FRAGRANCE pleasantness of the sample, by circling the appropriate number on each scoring scale."

Each sample of cat litter sniffed is assigned a number. The panelist, using a scale of 1 to 9, rates the cat litter with respect to the following four factors: (1) fecal/urine intensity, (2) ammonia odor,[3] (3) fragrance intensity, and (4) fragrance/sample pleasantness.

With respect to factor 1, a rating of 1 indicates "no odor," a rating of 3 indicates "weak odor," a rating of 5 indicates "moderate odor," a rating of 7 indicates "strong odor," and a rating of 9 indicates "extremely strong odor." The rating of factor 2 uses the same gradings as factor 1. With respect to factor 3, a rating of 1 indicates "no fragrance noted," a rating of 3 indicates "weak fragrance," a rating of 5 indicates "moderate fragrance," a rating of 7 indicates "strong fragrance," and a rating of 9 indicates "extremely strong fragrance." With respect to factor 4, a rating of 1 indicates "very unpleasant," a rating of 3 indicates "slightly unpleasant," a rating of 5 indicates "neutral," a rating of 7 indicates "slightly pleasant," and a rating of 9 indicates "very pleasant." Each page of the panelist's questionnaire provides space for the rating of two samples of cat litter.

Prior to commencing her services for Lowe, Simms signed a document entitled "Informed Consent Statement," Exhibit E–5, on a form provided by Lowe. That document reads:

It is the purpose of this study to evaluate cat litter to determine fecal/urine odor intensity, fragrance intensity, and fragrance pleasantness. Evaluations will be done initially and 3 days, 6 days, 9 days, 12 days, and 15 days after the initial test period. All six visits must be made to the lab to complete the study.

The test materials employed in the study are products with which any adverse experience would be highly unlikely. Nevertheless, each subject should be instructed to volunteer information concerning any adverse reaction on the date that they are first observed.

[Lowe] will keep confidential information concerning you that is obtained in connection with this study, except that the Company whose product is being tested will receive a copy of the study. In addition, the Food and Drug Administration and

---

**3.** The ammonia odor factor, according to Clay Nelson, Lowe's vice president, is "rather comical" in many instances, "because we know that there may be ammonia present and people won't smell ammonia, and vice versa.... People cannot smell ammonia when it's present, and it's strictly an olfactory situation that exists, it's a medical situation, we do pick that up over time, so they are removed from the rolls at that time."

The ammonia factor is not mentioned in Exhibit E–5, described later.

others in certain legal actions may inspect the records of the study.

If you have any questions about this study or your rights in the case of side effects or injury, contact any staff member, who will arrange for you to meet with the Investigator or the Manager.

I understand that I will be paid an agreed upon amount for the completion of this study. I know that I may drop out at any time. If I drop out on my own accord for personal reasons or am dismissed for refusal to obey rules or follow directions, I will not be paid. If, in the judgment of the investigator, it is best to discontinue my participation in the study for other reasons, I will either be paid in full or for that portion of the test already completed. I have read all the above information and was given an opportunity to ask questions about any part of it. I am 18 years of age or older, an indoor cat owner and a user of cat litter, and I freely and without reservation give my informed consent to serve as a subject in this study. I have received a copy of this consent form.

Simms served as a panelist during the second and third quarters of 1989. Simms' services were performed at Lowe's facility in Cape Girardeau. During the 15–day test period, Simms, like other panelists, was required to conduct her study every third day at any time between 8 a.m. and 10 a.m., and 12 noon and 5 p.m. Each study of a sample took approximately five minutes. Simms was required to conduct the study personally. A monitor, employed by Lowe, was present while Simms conducted her study, but the monitor did not assist in the study nor answer questions about what was being studied. In addition to the samples, Lowe supplied Simms with the questionnaire and a pencil. No other materials were needed. The only report required to be submitted by Simms was the questionnaire.

Simms was not required to undergo training before making her studies. At the end of the 15–day study period, Lowe paid Simms by check the sum of $5 for each day Simms

sniffed. For federal tax purposes, Lowe provided Simms with Internal Revenue Service Form 1099. No taxes were withheld from Simms' pay. Simms was not assigned an employee identification number, but Lowe's accounting department did assign Simms an identification number. No travel expenses or other expenses were paid by Lowe on behalf of Simms. There was no contract requiring Simms to participate in the studies for a definite period of time. Simms was free to withdraw from the panel at any time.

Since each study took approximately five minutes and could be performed before or after normal business hours, the panelists are free to work for other companies, and some did so. Simms did not have other employment, nor was she engaged in her own independently established business. Hundreds of consumers participate as panelists, and a computer picks at random the names of the panelists to be chosen for a particular study. Each panelist has the option of accepting the assignment. If the assignment is not accepted, the panelist's name is put back in the pool and may be chosen later.

Lowe's vice president Nelson testified that each questionnaire submitted by a panelist is logged in a computer by a technician. The questionnaire becomes part of a running total which, at the end of the test, is statistically analyzed to determine whether the fragrance is "performing or working." He also said:

If a particular fragrance indicates in our statistical test that it doesn't work, that particular fragrance is just disregarded. These are strictly developmental fragrances. They are not our current product. There may be a current product in the test. There has to be as a benchmark so we know how it's performing against our own product at a given day. That's just a standard procedure.

Nelson said that the panelists have to identify the samples sniffed so there's not a mistake in the recording of the data. "We don't tell them that they have to smell something or that they do not smell something. . . . It's basically what do they smell."

In *Veterans Services, Inc., supra,* the court listed the 20 factors set forth in IRS Ruling 87–41 to be considered in determining whether a particular worker is an employee or an independent contractor. In the following listing of those factors, the first paragraph under each factor is the comment contained in IRS Ruling 87–41. The second paragraph contains comments on Simms' relationship to Lowe.

1. INSTRUCTIONS. A worker who is required to comply with other persons' instructions about when, where, and how he or she is to work is ordinarily an employee. This control factor is present if the person or persons for whom the services are performed have the *right* to require compliance with instructions.

Simms was given the instructions contained in Exhibit E–3, the questionnaire. She was told how to release the odors from the containers of cat litter so that she could smell the odors. A monitor was present while Simms performed her work. By signing Exhibit E–5, Simms stated that she understood Lowe could dismiss her for failure to obey rules or follow directions.

2. TRAINING. Training a worker by requiring an experienced employee to work with the worker, by corresponding with the worker, by requiring the worker to attend meetings, or by using other methods, indicates that the person or persons for whom the services are performed want the services performed in a particular method or manner.

By Exhibit E–5, Simms agreed that she was at least 18 years of age and that she was "an indoor cat owner and a user of cat litter." No special training was required to follow the rather simple instructions contained on Exhibit E–3. A panelist must possess the sense of smell. The ammonia factor would disclose a lack of that sense. Clay Nelson testified that Lowe has a manager of technical services or of sensory programs who would show the panelists what the buckets contained and how they would be unplugged so the odors could be smelled. Lowe's monitor was always present in the building in case the panelist had questions.

3. INTEGRATION. Integration of the worker's services into the business operations generally shows that the worker is subject to direction and control. When the success or continuation of a business depends to an appreciable degree upon the performance of certain services, the workers who perform those services must necessarily be subject to a certain amount of control by the owner of the business.

Cat litter testing is an integral part of Lowe's business. Information from the sniffers is used to develop and improve cat litter fragrances which consumers will like. Nelson testified that the information gathered from the panelists is placed in a computer and analyzed and "it would change an ingredient that they would put in the product."

4. SERVICES RENDERED PERSONALLY. If the services must be rendered personally, presumably the person or persons for whom the services are performed are interested in the methods used to accomplish the work as well as in the results.

Simms was required to sniff and to rate the results of her sniffing. Lowe's brief concedes that individual olfactory senses are necessary and, if a panelist is unable to complete a particular study, Lowe would remove that panelist's report from the statistical analysis.

5. HIRING, SUPERVISING, AND PAYING ASSISTANTS. If the person or persons for whom the services are performed hire, supervise, and pay assistants, that factor generally shows control over the workers on the job. However, if one worker hires, supervises, and pays the other assistants pursuant to a contract under which the worker agrees to provide materials and labor and under which the worker is responsible only for the attainment of a result, this factor indicates an independent contractor status.

Simms hired no one to assist her. Lowe hired and paid the monitor. Lowe's employees processed the results of Simms' sniffing.

6. CONTINUING RELATIONSHIP. A continuing relationship between the worker and the person or persons for whom the services are performed indicates that an employer-employee relationship exists. A continuing relationship may exist where work is performed at frequently recurring although irregular intervals.

Simms stopped working for Lowe when she obtained a full-time job elsewhere. Simms' name was still on Lowe's list of panelists.

7. SET HOURS OF WORK. The establishment of set hours of work by the person or persons for whom the services are performed is a factor indicating control.

Simms was required to perform her work between 8 a.m. and 10 a.m., or between 12 noon to 5 p.m., and to do so every third day during the 15–day study period.

8. FULL TIME REQUIRED. If the worker must devote substantially full time to the business of the person or persons for whom the services are performed, such person or persons have control over the amount of time the worker spends working and impliedly restrict the worker from doing other gainful work. An independent contractor, on the other hand, is free to work when and for whom he or she chooses.

The nature of the work did not require full-time commitment by Simms.

9. DOING WORK ON EMPLOYER'S PREMISES. If the work is performed on the premises of the person or persons for whom the services are performed, that factor suggests control over the worker, especially if the work could be done elsewhere. Work done off the premises of the person or persons receiving the services, such as at the office of the worker, indicates some freedom from control....

Simms was required to perform all of her work at Lowe's facility. Lowe's brief states: "This is because the nature of this service required a minimum of forty (40) cats to be present to provide urine and fecal matter on demand for the study.... Due to the nature of the type of service performed, it would be difficult to conduct such a test without a special environment."

10. ORDER OR SEQUENCE SET. If a worker must perform services in the order or sequence set by the person or persons for whom the services are performed, that factor shows that the worker is not free to follow the worker's own pattern of work but must follow the established routines and schedules of the person or persons for whom the services are performed. Often, because of the nature of an occupation, the person or persons for whom the services are performed do not set the order of the services or set the order infrequently. It is sufficient to show control, however, if such person or persons retain the right to do so.

Although Simms was not told to sniff the samples in any particular sequence, she was required to do her sniffing during designated hours on designated days during the 15–day study period.

11. ORAL OR WRITTEN REPORTS. A requirement that the worker submit regular or written reports to the person or persons for whom the services are performed indicates a degree of control.

Simms had to fill out the questionnaire, Exhibit E–3, to show the results of her sniffing.

12. PAYMENT BY HOUR, WEEK, MONTH. Payment by the hour, week, or month generally points to an employer-employee relationship, provided that this method of payment is not just a convenient way of paying a lump sum agreed upon as the cost of a job. Payment made by the job or on a straight commission generally indicates that the worker is an independent contractor.

Simms was paid $5 for each day she sniffed, and received that payment from Lowe at the end of each 15–day study period.

13. PAYMENT OF BUSINESS AND/OR TRAVELING EXPENSES. If the person or persons for whom the services are performed ordinarily pay the worker's business and/or traveling expenses, the worker is ordinarily an employee. An employer, to be able to control expenses, generally retains the right to regulate and direct the worker's business activities.

Simms incurred no expenses in doing her work .at Lowe's facility. She was not paid travel expenses to get to the facility, but usually such expenses are not paid by an employer.

14. FURNISHING OF TOOLS AND MATERIALS. The fact that the person or persons for whom the services are performed furnish significant tools, materials, and other equipment tends to show the existence of an employer-employee relationship.

Simms provided no tools or materials. Lowe provided such equipment, including paper and pencil, which Simms needed.

15. SIGNIFICANT INVESTMENT. If the worker invests in facilities that are used by the worker in performing services and are not typically maintained by employees (such as the maintenance of an office rented at fair market value from an unrelated party), that factor tends to indicate that the worker is an independent contractor....

Simms had no investment in any facilities or equipment. Lowe's brief says: "The facilities are provided by Lowe."

16. REALIZATION OF PROFIT OR LOSS. A worker who can realize a profit or suffer a loss as a result of the worker's services (in addition to the profit or loss ordinarily realized by employees) is generally an independent contractor, but the worker who cannot is an employee....

The only profit Simms realized was the $5 Lowe paid her for each test. She assumed no risk of a loss.

17. WORKING FOR MORE THAN ONE FIRM AT A TIME. If a worker performs more than de minimis services for a multiple of unrelated persons or firms at the same time, that factor generally indicates that the worker is an independent contractor. However, a worker who performs services for more than one person may be an employee of each of the persons, especially where such persons are part of the same service arrangement.

Simms did not sniff cat litter for any firm other than Lowe. Panelists were free to work for other companies.

18. MAKING SERVICE AVAILABLE TO GENERAL PUBLIC. The fact that a worker makes his or her services available to the general public on a regular and consistent basis indicates an independent contractor relationship.

There was no evidence that Simms held herself out to the general public as a sniffer of cat litter. Simms did not operate her own business.

19. RIGHT TO DISCHARGE. The right to discharge a worker is a factor indicating that the worker is an employee and the person possessing the right is an employer. An employer exercises control through the threat of dismissal, which causes the worker to obey the employer's instructions. An independent contractor, on the other hand, cannot be fired so long as the independent contractor produces a result that meets the contract specifications.

By Exhibit E–5, signed by Simms at the instance of Lowe, Simms agreed that she would not be paid if she was dismissed for refusal to obey rules or follow instructions.

20. RIGHT TO TERMINATE. If the worker has the right to end his or her relationship with the person for whom the services are performed at any time he or she wishes without incurring liability, that factor indicates an employer-employee relationship.

By Exhibit E–5, Simms acknowledged that she could drop out of the study at any time,

but if she did so on her own accord, or was dismissed by Lowe for failure to follow directions or obey rules, she would not be paid.

No one of the foregoing factors is controlling, and some on this record may be more important than others. This court holds that there was competent and substantial evidence to support the finding of the Commission that the services performed by Simms for Lowe were performed by her as an employee and not as an independent contractor within § 288.034.5, as amended 1989. The factors favorable to that finding are factors 1, 2, 3, 4, 5, 7, 9, 11, 14, 15, 18, 19, and 20. The circuit court erred in ruling otherwise.

## Was the Employment of Simms Excluded by § 284.234.12(17)?

■ Section 288.034.12 reads, in pertinent part: "The term 'employment' shall not include: ... (17) Services performed as a volunteer research subject who is paid on a per study basis for scientific, medical or drug related testing for any organization other than one described in section 501(c)(3) of the Internal Revenue Code or any governmental entity." No party claims that Lowe is the type of organization described in § 501(c)(3) of the Internal Revenue Code and, of course, Lowe is not a governmental entity.

The issue is: Did the services performed by Simms for Lowe constitute "services performed as a volunteer research subject who is paid on a per study basis for scientific, medical, or drug related testing?"

Any testing done here was clearly not medical testing or drug related testing. The testing done by Simms consisted of recording her individual reactions to her sniffing of the cat litter samples. It might be argued that Simms did not perform services as a "volunteer research subject" because the thing being tested was the litter and not the litter sniffer. It is unnecessary to make that determination because the finding of the Commission that § 288.034.12(17) did not exclude Simms is a proper finding.

The rule of *ejusdem generis*, an aid to statutory construction problems, suggests "that where general words follow a specific enumeration of persons or things, the general words should be limited to persons or things similar to those specifically enumerated." *United States v. Turkette*, 452 U.S. 576, 581, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981), *citing* 2A Sands, *Sutherland on Statutory Construction* § 47.17 (4th ed. 1973).

*Pollard v. Board of Police Com'rs*, 665 S.W.2d 333, 341 n. 12 (Mo. banc 1984).

'The maxim *noscitur a sociis*, that a word is known by the company it keeps, while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth ...' in statutory construction. *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307, 81 S.Ct. 1579, 1582, 6 L.Ed.2d 859 (1961).

*Id.* n. 13.

Section 288.020.2 provides, in pertinent part: "This law shall be liberally construed to accomplish its purpose to promote employment security." The word "scientific," as used in "scientific, medical or drug related testing" in § 288.034.12(17), should be construed "by the company it keeps," to-wit, "medical or drug related." So viewed, the type of testing contemplated by § 288.034.12(17) is that of a high order entailing special knowledge or professional expertise. The ability of a sniffer to detect, and estimate the degree of unpleasantness of, the odor of urine or feces in cat litter does not rise to that level. This court holds that the evidence supports the finding of the Commission that the services performed by Simms for Lowe were not within the exclusion contained in § 288.034.12(17).

The judgment of the circuit court is reversed.

CROW and GARRISON, JJ., concur.